Moore, Appellant, vs. Michaelson and others, Respondents.

*January 28—February 18, 1913.*

*Sale of stallion: Fraud: Rescission: Return: Election to affirm: Recoupment of damages: Pleading: Equity: Reformation of note obtained by fraud.*

1. One who has the right to disaffirm or rescind an executory contract must do so with reasonable promptness after he has, or by proper diligence should have, learned of the facts upon which the right is based.
2. Although the purchase of a stallion was induced by fraud and notes conditionally given for the purchase price were delivered in violation of an agreement with the signers, the con-

tract is not for that reason wholly void, in the absence of a return or offer to return the horse. And where, with full knowledge of the facts, the purchasers paid one of the notes so given and elected not to return the horse, this was an affirmance of the contract. *Hodge v. Smith*, 130 Wis. 326, explained.

3. But in such a case, when sued upon one of the remaining notes by one not a holder thereof in due course, the purchasers had the right to recoup their damages for the fraud; and an answer, though framed on the theory that if the fraud were proven the defense was complete, alleging that the stallion was practically worthless for breeding purposes and demanding dismissal of the claim,—thus alleging by inference that the defendants had fully paid for the stallion when they paid the first note for $1,000,—contains in substance the allegations necessary to sustain a claim for recoupment.

4. Judicial notice may be taken of the fact, as a matter of common knowledge, that a stallion which can beget only thirty-five per cent. of sound colts is valuable only as a draft animal and is not worth $1,000. TIMLIN, J., dissents.

5. Where defendants were induced by fraudulent devices to buy property and give notes far in excess of its value, equity will not assist in the consummation of the fraud by reforming and enforcing one of such notes at the suit of one who is not a *bona fide* holder.

APPEAL from a judgment of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action in equity brought by an alleged purchaser for value in due course of a negotiable promissory note to reform the same, and enforce it as reformed. The note was one of four joint and several negotiable notes given by the twelve defendants and one other person not sued, all of whom are farmers residing in Polk county, Wisconsin, in payment for a stallion sold to them August 7, 1905. The purchase price of the stallion was to be $4,000, and the notes were intended to be for $1,000 each. The present one, however, which is the second of the series and fell due September 1, 1908, by mistake contained a promise to pay only "ten" dollars instead of "ten hundred" dollars, as intended, and the mistake was not discovered until a considerable time after the transaction.

The defenses were the usual defenses in such cases, viz. (1) that the plaintiff was not a purchaser in good faith for value, and that the notes were obtained by the fraudulent representation that the horse would beget at least sixty per cent. of healthy colts, and in fact did not beget more than thirty-five per cent.; (2) that it was agreed that neither the notes nor the written contract of purchase of the horse should be delivered or be of any validity until twenty shares in the horse had been subscribed for by responsible subscribers, and said shareholders had also signed the notes, which conditions were never complied with. The horse was bought of the firm of McLaughlin Brothers, and the notes were payable to the order of the "Union Investment Co.," but it was alleged that the two concerns were represented to be one and the same, and were in fact acting together in the matter. It appeared that the plaintiff was a private banker at Merriam Park, Minnesota, who purchased the four notes of the Union Investment Company about September 15, 1905, and before any of them were due, and paid for them $4,000, although the notes ran at six per cent. and more than a month's interest had then accrued. The horse was never returned or offered to be returned by the defendants.

The action was tried by the court and findings made to the effect that the use of the name of the Union Investment Company in the notes in question was not *bona fide,* but was in substance a trick or scheme, so that it should appear that the notes were not in fact given for the horse; that the plaintiff by reason of intimate business relations with McLaughlin Brothers in the past, arising out of similar notes, was put upon inquiry as to the probable fraudulent character of the note, and hence was not a holder in due course, but was actually a purchaser in bad faith; that the horse was sold under the representations alleged in the complaint as to his begetting power, and also that the notes were signed by the defendants under the agreement that they should not be delivered

or be binding until twenty shares of stock had been subscribed by responsible subscribers; that the horse in fact only begot thirty-five per cent. of good colts, that only eighteen shares of stock were ever subscribed for, and that the subscribers to the note represented only said eighteen shares. From these facts the trial court concluded that the subscription contract was void for the fraud; that the note was obtained by fraud; that it was delivered to the Union Investment Company without authority of the makers; that it was wholly without consideration; that it never became a legal obligation as between the Union Investment Company and the defendants; and that the plaintiff is not a holder in due course, but holds the same subject to the defects in the title of the Union Investment Company. Judgment was entered dismissing the complaint on the merits, and the plaintiff appeals.

For the appellant there was a brief by *C. C. & A. E. Coe* and *C. M. Lynn,* and oral argument by *C. C. Coe.*

For the respondents there was a brief by *Kennedy & Yates,* and oral argument by *W. T. Kennedy.*

WINSLOW, C. J. Examination of the evidence convinces us that the findings of fact made by the trial judge are amply supported. We do not find it necessary to rehearse or discuss the evidence in detail. It is considered that the facts in the case are, as found by the trial court, that the Union Investment Company was but a stalking horse for McLaughlin Brothers in the transaction with the defendants; that the representations as to the begetting power of the horse were made as alleged in the complaint and that they were essentially false; that it was understood and agreed that the notes should not be binding until twenty shares in the horse had been subscribed for by responsible parties, and that such shares were never subscribed; that the plaintiff is not a holder in due course, but really purchased the notes in bad faith.

To these facts may be added the undisputed fact that the first note of $1,000 fell due in 1907 and was paid by the defendants when due, as well as the fact that the defendants have never offered to rescind the contract and return the horse, but still retain him in their custody.

The only question in the case which we deem doubtful is the question whether upon these facts the judgment of dismissal upon the merits was right.

The plaintiff urges with much force that by failing to return the horse after knowledge of all the facts and by paying the first of the series of notes two years after its date, at which time the demerits of the horse were fully known, the defendants have not only lost any right which they may have had to disaffirm the purchase, but have affirmatively ratified it.

The principle is very familiar that one who has entered into an executory contract under circumstances which entitle him to disaffirm or rescind must exercise his right of rescission with reasonable promptness after he has acquired or should by proper diligence have acquired knowledge of the facts upon which his right of rescission or disaffirmance is based. *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. In the present case it cannot be doubted but that the defendants knew every fact concerning the character of the horse, and knew also that the notes had been delivered contrary to the agreement, at the time they paid the first note of $1,000, and long before this action was commenced.

Respondents rely on *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192, as an authority supporting the proposition that the contract can be wholly avoided in such a case on the ground of the fraud, even where there has been no return or offer to return the property received. The difficulty is that in the *Hodge Case* it appears by the printed record that the horse died, without fault of the defendants, a few months after the sale and long before the notes came due, hence there

was nothing which could be returned. The case was presented, argued, and decided with that fact in mind, although it seems inadvertently to have been omitted in the statement of the case. That there was no intention in that case to depart from the ordinary rule that return of the property, if return be possible, is necessary to make the defense complete, seems quite apparent from the fact that *Luetzke v. Roberts,* 130 Wis. 97, 109 N. W. 949, is cited in supporting the proposition that fraud constitutes a defense. By reference to the latter case it will be found that the contract was there formally rescinded by the offer to return the horse, coupled with a demand for the cancellation of the notes given for it. In the present case, therefore, it would seem that the judgment could not be sustained merely on the ground that the sale was induced by fraudulent representations as to the quality of the horse and the number of signers to be obtained to the note, because after knowledge of the frauds practiced on them the defendants deliberately chose not to return the horse or rescind the sale, but on the contrary paid the first note and kept the horse, thus electing, with knowledge of all the material facts, to affirm the contract instead of repudiating it. Their remaining remedy was to recoup their damages when sued upon the notes for the purchase price, or in other words to reduce the plaintiff's recovery on the remaining notes by the amount which they were damaged by the fraud.

While the answer was probably framed on the theory that if fraud were proven the defense was complete, it also contains substantially the allegations necessary to sustain a claim for recoupment of damages. It alleges that the horse could not make enough as a stallion to pay for his keep and was practically worthless for breeding purposes. It does not specifically allege what the actual value of the horse was, but it demands judgment of dismissal of the complaint, thus quite plainly alleging, by inference at least, that they had already fully paid for the horse when they paid the first $1,000 note.

Moore v. Michaelson, 152 Wis. 352.

While there is no specific proof as to the value of the animal, we take it to be a matter of common knowledge that a stallion which (as the court found) could only beget thirty-five per cent. of sound colts is of no value as a stallion, and that his only value would be his value as a draft animal. Certainly the court can say that, as a draft animal, he would not be worth a thousand dollars. Doubtless this was the basis on which the trial court concluded that the note was wholly without consideration, and on this basis the judgment seems to be substantially right. The defendants have already paid more than full value for the horse, and should not in good conscience be required to pay more.

It may well be that there is another ground upon which the same result might be reached. The plaintiff is appealing to a court of equity to reform the note and enforce it. It appears that his assignors, in whose shoes he stands, obtained the note by fraudulent devices and gave property for it which was worth little in comparison to the value as represented. If the court lends its aid to reform the note and enforce it as reformed, it will actively assist in the consummation of the original fraudulent scheme to unload a poor stallion on a company of farmers at a fabulous price.

Courts of equity do not allow their process to be so used. The rule which requires clean hands of him who would appeal to the conscience of the chancellor would seem to be applicable to such a case.

We prefer, however, to rest the decision on the merits.

*By the Court.*—Judgment affirmed.

TIMLIN, J. (*concurring*). I concur in affirmance on the second ground stated in the opinion. I am unwilling to take judicial notice of the value of a horse from any of the data furnished by the evidence and mentioned in the opinion of the court, and I dislike to acquiesce in such a precedent.

VINJE, J., took no part.