[File No. Cr. 237]

STATE OF NORTH DAKOTA, Respondent, v. MARGARET SIMPSON, Defendant and Appellant.

(49 NW2d 777)

Opinion filed October 31, 1951

*Paul Campbell,* for appellant.

*E. T. Christianson,* Attorney General, and *Halvor L. Halvorson, Jr.,* State's Attorney, for respondent.

GRIMSON, J. This is a criminal contempt proceeding brought under Chapter 27–10 NDRC 1943. The proceedings arise from an action for the abatement of a common nuisance under Chap. 42–04 NDRC 1943. In that action, commenced Nov. 30, 1949, a complaint, verified by the State's Attorney of Ward County, on information and belief, alleged that the defendant, Margaret Simpson, was maintaining a house of prostitution commonly known as a bawdy house, upon certain property in the City of Minot. Supporting the complaint was the affidavit of the state's attorney, also on information and belief, to the same effect as the complaint. The prayer of the complaint was for an abatement of such nuisance and that the defendant be enjoined from using the premises as a place for illicit sexual intercourse. A temporary injunction was issued restraining the defendant from maintaining a nuisance or engaging in a course of unlawful conduct on the premises "by permitting said premises to be used as a place for the illicit sexual intercourse until this action be tried and determined on its merits or until the further order of this court." An order to the defendant to show cause was issued returnable Dec. 3, 1949, why the premises should not be shut up until the time of the trial or further order of the court. The hearing on that petition was held. At that time the defendant appeared and challenged the jurisdiction of the court and the validity of the order to show cause. The court overruled the challenge and the objection of the defendant and issued its "injunctional warrant" directing the sheriff to shut up the premises by padlocking the same until the action would be tried. Thereupon the defendant applied for an appropriate supervisory writ of this court upon which application an order to show cause was issued. After hearing in this court the writ was granted and the district court directed to vacate the "injunctional warrant"

and release the premises. In connection therewith this court said: "The temporary injunction, however, heretofore referred to and of which the petitioner does not complain, will remain operative and in effect." Simpson v. District Court of Ward County, 77 ND 189, 42 NW2d 213.

On Sept. 7, 1950, the state's attorney petitioned the district court of Ward County for an order to show cause why the defendant should not be held in criminal contempt because of an alleged violation of said temporary injunctional order. An order to show cause was issued, returnable Sept. 18, 1950. On the return date the defendant appeared by her attorney and made a motion to quash the order to show cause. The court denied the motion to quash, and ordered the state's attorney to file a complaint in the form of affidavits "specifying the facts and circumstances charged against the defendant," directed the defendant to "make a written answer thereto by affidavits" and set a hearing thereon for Oct. 16, 1950. The State's Attorney filed such affidavits and the defendant answered. A hearing was had thereon. Oral evidence in addition to the pleadings and affidavits was heard. The court found the defendant guilty of criminal contempt and ordered judgment that she be imprisoned for 60 days, fined $100.00 and in default of payment that she be imprisoned until fine and costs were paid but not exceeding 30 days beginning at the expiration of the 60 day period. From that judgment this appeal is taken. Statement of the case was settled including the testimony taken and all the proceedings had.

A hearing on contempt charges is a special proceeding authorized by Chap. 27–10 NDRC 1943. The appeal is taken under Secs 42–0211 and 27–1024 NDRC 1943, the latter of which provides: "Upon such appeal, the supreme court may review all the proceedings had and all affidavits and other proof introduced by or against such person."

Defendant alleges that the trial court erred in denying defendant's objection to the jurisdiction of the court and her motion to quash the order to show cause why defendant should not be punished for contempt on the grounds that the application therefor did not show violation of any valid, temporary injunction.

She claims, first, that the complaint and affidavits upon which the temporary injunction was granted did not state sufficient facts upon which to issue such an injunction. Both the complaint and the affidavit definitely describe by lot and block the premises defendant is alleged to occupy, allege that she maintains thereon a house of prostitution, and that she will continue to maintain such common nuisance unless restrained by an order or injunction of the court. The complaint further shows that H. L. Halvorson, Jr., was state's attorney of Ward County. The affidavit shows further that the defendant was found guilty of operating a disorderly house on said premises in the police court of the City of Minot on Nov. 26, 1949. Clearly there are alleged sufficient grounds to give the court jurisdiction to issue a temporary injunction. See Secs 42–0202 and 32–0603 NDRC 1943.

Defendant complains because the temporary injunction was issued ex parte without a hearing. She cites Sec 42–0202 NDRC 1943, which provides that an injunction shall be granted at the commencement of an action for the abatement of a common nuisance "in the usual manner granting injunctions. . . ." Then she refers to Chapter 32–06 NDRC 1943 on injunctions and Sec 32–0606 NDRC 1943 thereof which provides that the court, before granting an injunction, may, if he deems it proper, issue an order to show cause why the injunction should not be granted and in the meantime restrain the defendant as prayed for. It is clear that this section recognizes the jurisdiction of the court to grant a temporary injunction ex parte and places the question of whether a hearing shall be had prior to such granting, within the discretion of the court. She further refers to Sec 32–0607 NDRC 1943, which provides that a restraining order should not be issued ex parte unless it shall be shown in the moving papers that an exigency exists requiring the immediate issuance of an order "so that the rights of the parties may be preserved." That section refers to the restraining of acts not illegal in themselves but which may destroy the status quo of the matter in issue until the rights of the parties are adjudicated. It is hard to see how that section can apply to the situation in the case at bar. However, if jurisdiction existed, the failure to grant a prior hearing could have been no more than an irregularity and an

irregularity in the manner of the issuance of the temporary injunction cannot avail the defendant in a criminal contempt proceeding for violating the injunction.

The original action for the abatement of a nuisance was brought in equity under Chapter 42–02 NDRC 1943. By the summons, complaint and affidavit the court obtained jurisdiction of the subject matter and had full equity powers to issue a temporary injunction along the lines prayed for in the complaint. By the service of the original papers upon the defendant the court obtained jurisdiction of the defendant. The injunction was not void. Even if the injunction were held to be voidable for irregularity in its issuance the defendant could not raise that as a defense in a criminal contempt proceeding against her for violating the injunction. The issue on the criminal contempt proceeding is whether or not the defendant violated a valid order of the court. Whether it was issued irregularly or not would be a collateral issue. In State v. Markuson, 7 ND 155, 73 NW 82, an action was commenced to abate a liquor nuisance. A temporary injunction was issued restraining the defendants from using the premises as a place for keeping or selling intoxicating liquors. It was claimed that the injunctional order was broader in scope than was authorized by the statute. The court held that: "An injunctional order in an equity case, pendente lite, issued by a court having full equity powers and complete jurisdiction of the subject matter, must be obeyed while it remains in force, however irregularly or erroneously it may have been issued." At the most, the failure to grant a hearing upon the issuance of a temporary injunction in the instant case was an irregularity and provided no grounds for the defendant to violate it. See also McLeod v. Majors, 102 F2d 128; Salvage Process Corporation v. Acme Tank Cleaning Process Corp. 86 F2d 727; Poss v. Norris, 197 Ga 513, 29 SE2d 705; Liquor Control Commission v. McGillis, 91 Utah 586, 65 P2d 1136.

This construction of the law is further supported by Sec 32–0609 NDRC 1943 which provides: "If an injunction is granted by a judge of the court without notice, the defendant at any time before trial may apply, upon notice, to a judge of the court in which the action is brought to vacate and modify the same." If

the court denies his application the defendant has the right to appeal from such order of denial. Thus the defendant is given the right to move to the vacation of an injunction at any time, but until he does so, and the court finally grants his application the injunction prevails and a violation thereof would constitute contempt of court.

No steps were taken by the defendant in the instant case to vacate or modify the temporary injunction. Instead, upon her appearance on the order to show cause on Dec. 3, 1949, why a warrant should not issue to direct the sheriff to shut up the premises pending the trial, the defendant's counsel brought up the matter of the temporary injunction. During the course of that hearing he said: "You notice we are raising no question to a temporary injunction . . *. We are consenting to that temporary injunction as proper and right, and if we violate it, we want to be prosecuted. We are not going to violate it." The temporary injunction was not thereafter an ex parte order. The defendant cannot now complain even if there were an irregularity in the manner of its issuance.

The second objection to this temporary injunction raised by the defendant is that it had expired and become null and void because more than six months had passed prior to any alleged violation thereof and prior to the issuance of the order to show cause. In that connection defendant refers to Sec 32–0603 NDRC 1943, which concludes with the provision that: "In no case shall a longer period than six months elapse before the hearing of the merits of the case shall be had for the purpose of deciding the question as to the justice or necessity of making a temporary restraining order permanent." This provision, however, is in the chapter on injunctions generally, Chap. 32–06 NDRC 1943. It is not included in the provision for injunction, Sec 42–02 NDRC 1943, governing the abatement of a common nuisance under which this injunction was issued. Whether that section applied in the case at bar was a matter the defendant could have raised at the end of six months by application to vacate the temporary injunction as provided in Sec 32–0609 NDRC 1943. As long as she did not do that, even if it applied in this proceed-

ing, it gave the defendant no excuse for violating the temporary injunction.

Such an injunction as we have in the instant case which provides for its continuance "until this action be tried and determined on its merits or until the further order of this court," is generally held to continue in force until an order by the court to the contrary. 43 CJS Injunctions, Sec 242, p 982. On this issue it was held in Republic Trading Co. v. Hay, 90 NJ Eq 336, 108 A 83, that: "To hold in accordance with the contention of the defendant on this issue would . . . violate the policy of the court and destroy the very purpose for which the language has come to be used. The order means exactly what it says. The restraint continues until the order is discharged or made absolute."

Appellant's next objection is to the sufficiency of the application and affidavits for the order to show cause why the defendant should not be held in criminal contempt. That order to show cause was issued on an affidavit by the state's attorney alleging the commencement of the abatement action on Nov. 30, 1949; that a temporary injunction was issued in connection therewith restraining the defendant from maintaining a nuisance on the premises described therein commonly known as 228 3rd St SW Minot; that said injunction was still in force and effect; that it had been violated; that one Judy Cox pled guilty to the charge of prostitution in said place on the 25th day of July 1950 and the defendant had been arrested and found guilty in Police Court of operating a house of prostitution in said place on said date.

It is true that the pleadings and affidavits making a charge of contempt must be tested by the rules of criminal procedure applicable to indictments and information. State v. Root, 5 ND 487, 67 NW 590. A careful consideration of the affidavits shows that they fulfilled the requirements of the statute and rules. The defendant was made fully aware of the charges she would have to answer. These matters were all ruled upon by the District Judge adversely to the defendant's contention. He was fully justified in so doing.

Upon denying defendant's motion to quash, the court issued its order for the plaintiff to file a complaint in the form of affi-

davits and the defendant to make written answers thereto by affidavit. That was done.

. Counsel for defendant makes objection to this procedure. He claims that the court should have caused interrogatories to be filed and that the defendant should make written answers to such questions and thereupon either party could produce "affidavits or other proofs contradicting or corroborating any answers" and that upon that the court must determine whether the accused had committed the offense charged. That was the procedure under Sec 8188 CL 1913.

This procedure was changed in the recodification of 1943. Sec 27–1013 NDRC 1943, requires the court to "cause a complaint in the form of affidavit to be filed specifying the facts and circumstances of the offense charged." Except for substituting the words "complaint in the form of affidavit" for the word "interrogatories" the provisions of Sec 27–1013, supra, are the same as Sec 8188 CL 1913. The reviser's note explains this change as follows: "Revised for clarity without change in meaning. We have changed 'interrogatories' to 'complaint' in order to make the practice conform to usual court procedure." The principle of the law is not changed. The accused is still given the rights that she had under the old statute of being informed what the charge is and her right to answer. A mere change of words in the codification of a statute does not change the effect or meaning of such statute unless such intent is clearly indicated. State ex rel Johnson v. Broderick, 75 ND 340, 27 NW2d 849.

The defendant refers to the case of In re Dunbar, 49 ND 851, 193 NW 928, as holding that interrogatories are mandatory. That case was decided under Sec 8188 CL 1913. The principle was there upheld that the accused was entitled to know the charge against him. That is still the law. Only the mechanics of furnishing that information are changed from being stated in the form of interrogatories to being stated in the form of a complaint. The court made no error in the procedure adopted.

The defendant objects to the admission of some of the evidence as hereinafter considered and to the sufficiency thereof to sustain the findings of the trial court.

The complaint and affidavits in behalf of the state filed by the

state's attorney as ordered by the court, stated the charge against the defendant. They alleged the issuance of the injunction on Nov. 30, 1949 against the defendant and that it was still in force and further alleged that on July 25, 1950, the defendant and one Judy Cox were arrested on charges of operating a disorderly house and of prostitution, respectively, in violation of the injunction and were tried and found guilty by the Police Magistrate. That Judy Cox was arrested under the state law, charged with prostitution while a resident of the premises known as 228 3rd St SW Minot, and that she pled guilty in the County Court of Ward County on August 3, 1950, and was given a jail sentence, suspended on payment of costs.

In support of the affidavit of the state's attorney, John Rouse makes affidavit that he is a lumberjack, hauling lumber from Bonner's Ferry to Minot. That on July 25, 1950, at about 11:30 P.M. he stopped in front of the residence at 228 3rd St SW Minot. That he was invited to come into the house by the defendant; that on entering the house he was approached by a colored girl, later identified as Judy Cox, and led into a small bedroom; that she asked him, "Do you want a little fun?" and on his inquiry was informed that the charge was $5.00. Affiant asked if she would do it for $1.00 and alleges that "Said Judy Cox refused to have any relations with him for that price." That Judy Cox thereupon attempted to let him out by way of the front door but was informed by the defendant that he could not leave by the front door and that Judy Cox then let him out by way of the back door.

The affidavit of Eugene Paul Swanson in support of the plaintiff stated that he was a member of the Minot Police Force, engaged in plain clothes work on the night of July 25, 1950. That he stopped in front of the residence on 228 3rd St SW Minot, occupied by the defendant; that the defendant came outside of her residence calling her cat. That affiant asked her what she was looking for. She informed him and asked affiant if he was looking for anything; that affiant informed her, "I could be." That the defendant thereupon asked him to come into her residence where he was taken over by a colored girl, later identified

as Judy Cox, who led affiant into a bedroom and asked him: "Are you ready for a good time?" That she informed him the charge would be $5.00. Affiant asked if she would do it for $3.00. That "said Judy Cox refused to have any relations with him for that price and informed him that there was nothing under $5.00 in the house, and let him out the back door." Affiant then states that said Judy Cox was tried before the Police Magistrate on July 26th and found guilty of prostitution.

In the answer of the defendant and the affidavit of her attorney on the contempt proceedings it is admitted that Mr. Halvorson as State's Attorney, commenced the action for abatement on Nov. 30, 1949, and that a temporary injunction was issued in connection therewith all as alleged in the complaining affidavit; that the action is still pending. Defendant admits that she was arrested on July 25, 1950, on a charge of operating a disorderly house, tried and found guilty by the Police Magistrate; that on said date Judy Cox was arrested for prostitution, tried and found guilty by the Police Magistrate and that these arrests were made at 228 3rd St SW Minot, which she claims her home and residence. She admits that Judy Cox was then in her employ helping her about the home. She claims her bad health made it necessary for her to have female help on the premises. She admits that the police of Minot on many occasions came to her home making search for girls, without authority as she claims, and taking her and girls to the police station, booking them for violation of a city ordinance thereby creating a reputation of her home as a disorderly house; that said girls, without cause, were subjected to a fine and confinement in jail, usually suspended on payment of the fine and costs and sometimes on condition that they get out of town. She claims they left, not because they were guilty, but to save time and cost of an appeal. That Judy Cox was warned of this practice. Affiant further admits that sometime after midnight on July 25th some policemen came to her house saying they wanted to make a search and when asked what for said they were looking to see whether there was any girl in the house; that affiant informed them that there was no girl in the house; that she was seeking to avoid the arrest

and proceedings against Judy Cox without cause; that hearing this conversation Judy Cox attempted to hide in a trunk where the police found her, upon which both the defendant and Judy Cox were arrested; that any talk between Judy Cox and the policeman or Rouse was without defendant's knowledge, permission or consent. Defendant admitted that she was arrested on July 25, 1950, under a city ordinance, charged with keeping and maintaining a house where girls were allowed to stay for purposes of prostitution, tried and found guilty, from which judgment she had appealed, which appeal was still pending. Defendant denied all allegations contained in the complaint and affidavit of the plaintiff connecting her in any way with keeping a bawdy house and claiming what amounted to persecution by the Minot City Police. She admitted the cat calling incident described by Eugene Paul Swanson and claims she did not invite him in and that he did not enter to her knowledge. She denied all knowledge of Rouse. She tendered, in connection with her answer, a copy of the records, proceedings and evidence had in Police Court upon her trial and asked the court to take judicial notice of certain sections of Chapter 9, Revised Ordinances of the City of Minot of the year 1940. She denies specifically, permitting the premises described to be "used as a place for illicit sexual intercourse" and claims said premises were not so used.

The affidavit of her attorney, Paul Campbell, is more of an argument setting forth his interpretation of the law regarding the validity of the temporary injunction and the actual meaning thereof; that the arrests of defendant and Judy Cox were without warrant, judgment against them appealed, admitting that Judy Cox afterward pleaded guilty in County Court as stated.

When the state's attorney, after filing of the complaint, affidavit and answer, attempted to call attention to some of the admissions in defendant's answer, Mr. Campbell, her attorney, made some explanation of those admissions. He now objects because his explanations and whatever talk there was then had between the court and counsel were not taken down in shorthand by the reporter. The record shows no request on his part for that and his application to include his version of those proceedings in the settled statement of the case was denied by the court.

A review of this application shows that the matters therein contained appear in the record and files in one way or another. There was no error on the part of the court in denying the inclusion thereof in the settled statement of the case.

Following that interruption all the files and records in the case of State of North Dakota v. Judy Cox, referred to in the affidavits were stipulated in evidence subject to the objection of defendant's counsel that they were not binding on the defendant.

The state then called Eugene Paul Swanson and examined him orally. That examination covered the visit to No. 228 3rd St SW on the night of July 25, 1950, referred to in his affidavit in more detail. He was very thoroughly cross examined by the defendant's attorney. The state also called one, Gisle Johnson, who was the policeman that searched the premises at 228 3rd St SW. He testified to finding in one of the rooms a blanket covered trunk. Taking off the blanket and opening the trunk he found Judy Cox in the trunk, covered with a quilt and clothed only in a slip. He also was thoroughly cross examined and in connection with his cross examination defendant introduced the testimony of the hearing in police court in the case of the City of Minot v. Margaret Simpson on the charge of operating a disorderly house.

Defendant now objects to the taking of this oral testimony claiming that the charge should be proved only by affidavits. It is hard to see why the defendant should be prejudiced by the oral testimony which allowed her the right of cross examination which she would not have had if only affidavits had been used. Furthermore, the statute, Sec 27–1013 NDRC 1943, provides that "Either party may produce affidavit or *other proof* corroborating or contradicting such answers." The testimony of the two policemen was such *other proof* corroborating and contradicting the paper evidence filed. It came within the provisions of the law and was properly received by the court.

Defendant assigns error on the admission of evidence. She claims that the court erred in receiving, over the objection of defendant, that the same were not binding upon her, evidence of "convictions and pleas of guilty by others in actions and proceedings under city ordinances and state statutes to which defend-

ant was not a party, over which she had no control." The county court files of the proceedings against Judy Cox on a charge of prostitution, at 223 3rd St SW Minot, on July 25, 1950, and of her plea of guilty thereto in the County Court of Increased Jurisdiction for Ward County were received in evidence. In her answer on the contempt charge defendant admits the truth thereof and the record also indicates that defendant's attorney stipulated the fact thereof, subject to his objection.

One of the essential matters that the state had to prove was that the defendant maintained a house where illicit sexual intercourse was indulged in contrary to the temporary injunction issued. The evidence that Judy Cox had been proceeded against and had pled guilty to prostitution in that house was very material to the issue raised. It bore directly on the character of the house maintained by the defendant. Furthermore, this evidence was admissible under Sec 42–0207 NDRC 1943, which provides: "In a prosecution under this chapter in a civil proceeding, evidence of the general reputation of the house, building, room, or place designated in the complaint shall be admissible for the purpose of proving the existence of a common nuisance. Proof of the fact that any person has pleaded guilty to violation of the provisions of any city ordinance or any other law of the land enacted to prevent a common nuisance also is admissible, if it can be shown further that such person, when pleading guilty, was or had been, at the time and place mentioned in the complaint in the action then pending before the court, a frequenter or inmate of such house, building, room, or place, and such proof shall be deemed prima facie evidence of the guilt of the defendant."

Defendant raises objections to the testimony of conversations that the state's witnesses had with Judy Cox out of the presence of the defendant. That also is evidence that tends to show the character of the house and is admissible. "The fact that the proprietress of the house was not actually present in the room when the lewd conversation was carried on does not render such testimony incompetent." Commonwealth of Penna. v. Butler, 82 Pa Super 390. See also Bach v. State, 206 Wis 143, 238 NW 816; People v. Levin, 292 Ill App 413; 11 NE2d 224; Commonwealth v.

Dolan, 155 Pa Super 453; Commonwealth v. Bagdasarian, 257 Mass 248, 153 NE 452.

Defendant specifies as error the admission in testimony of the reputation of the defendant's home. Sec 42–0207, supra, specifically provides that the reputation of a house shall be admissible to prove the existence of a common nuisance. See also State v. Farrier, 61 ND 694, 240 NW 872; State v. Mott, 53 ND 222, 226, 205 NW 234; Betts v. State, 93 Ind 375; State v. Leflang, 108 Neb 138, 187 NY 776.

Defendant also assigns as error the admission of answers to specific questions which are not included in the assignments of error filed. The court, however, has considered these supplemental objections and does not find any error in the rulings of the court. All of those questions go to matters bearing on the character of the house and of defendant's knowledge of what the house was being used for by Judy Cox.

Counsel for defendant assigns as error the failure of the court to grant his motion to dismiss the proceedings on the ground that because the defendant had been convicted in Police Magistrate's Court from which an appeal had been taken upon the same identical facts claimed as a violation of the temporary injunction and further that she had been arrested and bound over for trial on a criminal charge under the state law based on these same facts, she had been put into double or triple jeopardy.

The ordinance of a city providing for the good order, peace and morals of the city are police regulations separate and apart from the criminal jurisprudence of the state. They are enacted under Sec 40–0501 NDRC 1943 which provides that the governing body of a municipality shall have power: "To enact or adopt all such ordinances, resolutions, and regulations, not repugnant to the constitution and laws of this state, as may be proper and necessary to carry into effect the powers granted to such municipality or as the general welfare of the municipality may require, and to repeal, alter, or amend the same. Fines, penalties, and forfeitures for the violation thereof may be provided within the limits specified in this chapter notwithstanding that such offense may be punishable also as a public offense under the laws of this state."

Under Sec 40–0506 NDRC 1943, the penalties for the violation of any such ordinance may be a fine not to exceed $100.00 and the imprisonment shall not exceed three months for each offense. Thus the governing body of the municipality is given the authority to pass ordinances regulating its own local affairs in all matters not prohibited by state law, and even if such matters are covered generally by the state law. The same act may, therefore, become an offense both against the municipal ordinance and the state law. In effect it is an offense against two different sovereignties. It is now well settled by weight of authority that the prosecution of that act may be carried on by either the municipality or the state or by both without offending the constitutional provisions which prohibit double jeopardy for the same offense. People v. McDaniels, 137 Cal 192, 69 P 1006, 92 Am St Rep 81; 22 CJS Criminal Law Sec 296, p 449. In State v. Panchuk, 53 ND 669, 679, 207 NW 991, this court held:

"In order that one prosecution may be said to be for the same offense as another, within the language of the test as formulated by the weight of authority, it must appear that the offenses described in the informations or indictments are the same *in law and in fact.* The question of identity, therefore, is one of *law* and *fact.* It would seem that the act, on which the informations are based must be one and the same, and also, that the legal character of the crimes charged must be the same. No test is fully adequate which does not serve as a standard in measuring the identity of the crimes both from the standpoint of identity of fact and identity of legal nature." See also State v. Ligaarden, 59 ND 475, 230 NW 729, 70 ALR 126; In re Aipperspach, 63 ND 358, 248 NW 488; State v. Severin, 58 ND 792, 228 NW 199.

The defendant further contends that it was error to receive in evidence the files of the conviction of the defendant under the city ordinance because an appeal therefrom was pending. The defendant in her answer stated that she "hereby offers and tenders to the court and files in this court a copy of the record, proceedings and evidence had in said police court upon her trial and taken and transcribed by the official reporter of this court." No limitation was made as to the purpose for which this transcript was offered. The record was properly before the

court. The presumption of innocence ceases upon the conviction and the presumption of guilt prevails in the appellate court. Underhill Criminal Evidence, 3rd Ed Sec 42, p 41. In State ex rel Olson v. Langer, 65 ND 68, 98, 256 NW 377, 95 ALR 14, this court cites Supreme Court of Appeals, West Va. as follows: "The robe of innocence with which the law invested Mr. Camp during trial was stripped from him by the verdict of the jury. The judgment of the court has put upon him the garb of guilt. A legal as well as laical presumption has now arisen that his conviction is just." See also Berman v. U. S. 302 US 211, 82 L ed 204.

Finally counsel for defendant contends that the evidence is insufficient to sustain the judgment of the court. He claims that there is not evidence of any illicit sexual intercourse nor of defendant's knowledge or consent to any act or conduct that would constitute violation of the temporary injunction.

The temporary injunctional order provided that "You, Margaret Simpson, are hereby enjoined and restrained from maintaining a nuisance or engaging in the course of unlawful conduct at (describing the premises) by permitting said premises to be used as a place for illicit sexual intercourse until this action be tried and determined on its merits or until the further order of this court." The violation of this order must ordinarily be shown by circumstantial evidence. The nature of such a violation is such that proof by direct evidence is seldom available. 27 CJS Disorderly Houses, Sec 14, p 324.

"Proof of particular acts of lewdness in the house is not absolutely necessary to establish guilt." Betts v. State, 93 Ind 375. If the facts and circumstances in the evidence are such that the clear inference therefrom is that intercourse was practiced on the premises that is sufficient even if no particular act is shown. Smith v. State, 52 Ga App 88, 182 SE 816; State v. Flynn, 175 Iowa 604, 155 NW 254.

The reputation of the house, the conversations of Judy Cox with the two state witnesses, her plea of guilty of the crime of prostitution in that house, the action of the defendant in inviting the state's witnesses into the house, having one of them wait while a car drove by, turning them over to Judy Cox, knowing

Judy Cox took them to a bedroom, having them shown out by the back door, the defendant's denial that a girl was in the house at a time when Judy Cox was found covered up in the trunk, all are circumstances from which the only reasonable inference could be drawn that the defendant violated the temporary injunction and was guilty of criminal contempt. Clearly the evidence is sufficient to sustain the decision of the court.

On the review of the errors claimed we do not find any prejudicial errors and as to matters of fact we find competent evidence in the record to establish the guilt of the accused.

The judgment of the district court is affirmed.

MORRIS, C. J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.