[File No. 7265]

THE STATE OF NORTH DAKOTA EX REL., H. L. HAL-
VORSON, JR. as the State's Attorney in and for the County
of Ward in said State, Respondent, v. MARGARET SIMP-
SON, Appellant.

(49 NW2d 790)

Opinion filed Oct. 31, 1951

*Paul Campbell,* for appellant.
*H. L. Halvorson, Jr.* for respondent.

GRIMSON, J. This is an action for the abatement of a common nuisance under Chapter 42–02 NDRC 1943. H. L. Halvorson, Jr. as State's Attorney of Ward County, issued a summons and complaint herein on Nov. 30, 1949. In the complaint he alleges that he is bringing the action as State's Attorney for, and on behalf of, and in the name of the State of North Dakota; that the defendant was the occupant of certain premises in the City of Minot described by lots and block and also described as 228 3rd. St. S.W. Minot, owned by William W. Childress; that the defendant was maintaining upon said property a house of prostitution and maintaining thereon a common nuisance, commonly known as a bawdy house, whereby the decency of the neighborhood was habitually disturbed and will continue so unless restrained by an order of the court. He prays that the premises be declared a common nuisance and that an order issue directing the Sheriff of Ward County to shut up and abate the nuisance; that the defendant be enjoined from permitting said premises to be

used for illicit sexual intercourse; that a temporary injunction issue pending the trial. In support of that complaint the state's attorney also filed his affidavit on information and belief making the same allegations and further alleging that the defendant was found guilty in police court on Nov. 26, 1949 of operating a disorderly house on said premises and that numerous charges have been made against the defendant and other occupants of said building involving moral turpitude upon which they have been convicted and sentenced; that the defendant has used said premises as a house of prostitution where the peace, quiet and decency of the neighborhood has been habitually disturbed. The state's attorney also asked for an order to show cause why the premises should not be shut up and the sheriff ordered to take and retain possession of the property until final judgment.

Upon this complaint and affidavit a temporary injunction was issued restraining the defendant until the determination of the action or the further order of the court from maintaining a nuisance upon said premises by permitting them to be used as a place for illicit sexual intercourse. There was also issued an order to show cause on Dec. 3, 1949, why the premises should not be shut up and abated until the trial of the action or the further order of the court. All these papers were served upon the defendant on Nov. 30, 1949. At the hearing on the order to show cause a warrant was issued directing the sheriff to abate said nuisance. The defendant thereupon obtained an order to show cause from this court why an appropriate supervisory writ should not issue to set aside that order of the district court. Upon hearing in this court such writ was issued, and that order vacated. Simpson v. District Court of Ward County, 77 ND 189, 42 NW2d 213.

The defendant for answer in the abatement action admitted that she was in possession and that Childress was the owner of the premises described in the complaint and that Mr. Halvorson was now State's Attorney of Ward County. She made a general denial of all allegations against herself and said she had no knowledge of the violation of the peace and quiet of the neighborhood and, therefore, denied the same. In an affidavit filed in connection with the order to show cause she admitted she was

arrested, tried and found guilty in police court on Nov. 26, 1949, on a charge of operating a disorderly house, but alleged she intended to appeal from this conviction and denies her guilt and alleges unjust police persecution.

On Sept. 7, 1950, an order to show cause why the defendant should not be held in criminal contempt because of alleged violation of the temporary injunctional order, was issued on the petition of the state's attorney. A hearing thereon was held on the 16th day of October 1950. On such hearing the district court found the defendant guilty of criminal contempt and ordered judgment thereon. From that judgment the defendant appealed to this court. This court has affirmed that judgment in an opinion filed simultaneously herewith. State v. Simpson, 78 ND 360, 49 NW2d 777. That proceeding will be hereafter referred to as the contempt proceeding.

Following the trial of the contempt proceeding the court heard the abatement action and found that the defendant had maintained a common nuisance on the premises described by permitting the practice of prostitution, assignation and lewdness in the residence thereon, ordered the abating of said nuisance and taxed the defendant the costs and $100.00 attorney fee. From a judgment entered thereon this appeal is taken and a trial de novo demanded.

On the hearing the court took "judicial notice of all records and files in the case and the testimony given in the contempt hearing." In addition thereto the state's attorney offered testimony of three further witnesses corroborating the testimony already given in the contempt hearing. The defendant then testified in her own behalf and was supported by the testimony of her attorney. In the opinion on the contempt proceeding arising out of this case the evidence relative to her violation of the temporary injunction is recited and reference is made thereto. Defendant's testimony in the instant case was much the same as in the affidavit she filed in that hearing. She admits hearing witnesses in police court testify against her four or five times in the last year, that one of her girls was picked up once for vagrancy, once for prostitution, and that one girl was found hid in the radio cabinet and one in a trunk in her place. She admits

she was arrested several times for vagrancy, soliciting etc., but claims she was never guilty.

In her first assignment of error defendant claims the court erred in admitting any evidence under the complaint for the reason that said complaint failed to state facts sufficient to constitute a cause of action. That matter was raised in the contempt hearing against the validity of the temporary injunction and was there ruled adversely to defendant's contentions.

Defendant objected to the testimony of the policemen as regards the reputation of defendant's place based largely on what defendant's attorney calls police information. There is no showing that the policemen had any special interest in this matter except that of performing their duty. There is no reason why such testimony should be excluded. The weight to be given to the testimony was for the determination of the trial court.

Much of the argument of defense counsel both on oral argument and in his briefs is devoted to what is called the background of the case and what he alleges to be the persecution of the defendant by the police department. He, in effect, admits that the district in which defendant's house is located, commonly referred to as "Third Street Southwest" has a bad, moral reputation. He claims that in the effort of the Minot police to clean up that district the defendant suffers, not because she is guilty of any violations of law, but because she is located in that district. His assignments of error are replete with statements that the court improperly received in evidence police records and blotters without sufficient foundation showing convictions of the defendant and others of crimes not akin to the charge of the complaint herein, based on hearsay and police testimony with no opportunity for defendant to cross examine complainants and with no knowledge on her part of said alleged offenses.

An examination of the records and files in this case does not bear out defendant's claim of error in this respect. The only time in the various hearings had in this matter that police records were used in evidence was at the time of the hearing on the order to show cause held on Dec. 3, 1949, why warrant should not issue to the sheriff to take and retain possession of the premises pending the trial of the action. In the order settling

the statement of the case the trial court specifically enumerated that of which he took judicial notice and that hearing of Dec. 3, 1949 is not included therein.

It is true that in the contempt proceedings the state introduced the records of the conviction in police court of the defendant of keeping and maintaining a house where girls were allowed to stay for the purpose of prostitution and of the conviction of one Judy Cox of prostitution on defendant's premises, and of her prosecution in state court for prostitution under the state law. That procedure is fully discussed in the opinion in the contempt proceedings and found to have been without error.

Defendant contends that it was error of the court to take judicial notice of ex parte hearings on the application for the temporary injunctions and orders to show cause both in the attempted temporary abatement and in the contempt proceedings. The court had the right to do so. Sec. 31–002 NDRC 1943 provides that: "Every court in this state will take judicial notice . . . (2) of his own records and judgment . . . (19) of all proceedings in the case pending." "It is well settled that a court will take judicial notice of its own records in the immediate case or proceeding before it and of all matters patent on the face of such records, including all prior proceedings in the same case." 20 Am Jur Evidence, Sec 86, p 104. The contempt hearing was a proceeding arising out of the preliminary injunctional order issued in this case. In Haaren v. Mould, 144 Iowa 296, 122 NW 921, the court says: "But the court will take judicial notice of prior orders and proceedings in the same case without the necessity of any formal offer or physical production of the record in evidence. (Citations.) This has been interpreted to include the authority of a court in actions of a collateral character, and especially where the object or purpose of the proceedings is to enforce a judgment or decree entered in the principal case." See also Olive v. State, 86 Ala 88, 4 LRA 33, Note, 1 Jones on Evidence, 2d Ed Judicial Notice, Sec. 431, p 764; Goodwin v. Costello, 240 Mo App 656, 212 SW2d 804; Traders & General Ins. Co. v. Rhodabarger, (Tex Civ App), 109 SW2d 1119.

The District Court did take judicial notice in the final hearing in this case of all records and files in the case including the testi-

mony given at the contempt proceedings. The defendant objected thereto as irrelevant, incompetent and immaterial, and pointed, for particular application of that objection, to "Any acts that have taken place subsequent to the filing of the complaint in this case on Nov. 30, 1949." That is the only point of the objection. See Bank of Bettineau v. Warner, 17 ND 76, 114 NW 1085.

There was evidence introduced at the time of the contempt proceedings and upon the final hearing tending to prove the cause of action alleged in the complaint. This was brought down to the date of the hearings by the evidence upon which the contempt proceedings were instituted and by other evidence introduced upon the final hearing. In admitting that evidence the court committed no error. This is an equitable action.

"While equitable jurisprudence is to be determined with reference to the situation existing at the time when the bill is filed, the relief to be accorded by the decree is governed by the conditions which are shown to exist at the time of making thereof, and not by the circumstances attending the inception of the litigation." 19 Am Jur Equity, Sec 411, p 283.

"The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered." Conrad v. Kaup, 137 Neb 900, 291 NW 687.

"The general rule in actions at law is that the rights of the parties are determined as of the time of the beginning of the action. In this respect a suit in equity stands on a different footing, the general rule being that, to serve the ends of justice, equity will adapt its relief to the state of facts existing at the time of the determination of the suit." Colby v. Street, 168 Minn 57, 209 NW 537.

In an injunction proceeding the South Dakota Court, in Rutzen v. City of Belle Fourche, 71 SD 10, 20 NW2d 517, held that the court "is bound to determine not merely whether plaintiff is entitled to injunction at time of instituting action therefor, but whether such relief should be granted under facts as they appear at the time of trial." See also Sherman v. Foster, 158 NY 587, 593, 53 NE 504, 506. See also Peck v. Goodberlett, 109 NY 180, 16 NE 350, 353; Haffey v. Lynch, 143 NY 241, 248, 38 NE 298,

299; Pond v. Harwood, 139 NY 111, 120, 34 NE 768, 770; Baker et al. v. Salzenstein, 314 Ill 226, 145 NE 355; First Trust Company of Lincoln v. Airedale Ranch and Cattle Co. 136 Neb 521, 286 NW 766.

One of the errors assigned by the defendant in this court is that the owner of the property was not made a party. That assignment is without merit. The owner of the property is not a necessary party in this kind of an action. Sec 28–0208 NDRC 1943. There is no contention by the state that he is united in interest with the defendant in the maintenance of a nuisance. If, after a judgment is rendered against the defendant, he can show that he is without fault his rights are protected by Sec 42–0206 NDRC 1943.

Finally, the defendant contends that the evidence is insufficient to warrant the court in adjudging and decreeing the abatement of the premises. He again specifies as insufficiency of the evidence that there is not competent evidence of acts of prostitution, lewdness or assignation or that the house was maintained for such purposes. He claims the defendant had no knowledge of any such acts on the premises which she claims is her home and repeats his claim of police evidence and persecution.

The nature of the charge made is such that of necessity it usually has to be shown by circumstantial evidence. If the inferences that can be drawn from the evidence show clearly that the place was kept for purposes of prostitution and the defendant had knowledge thereof and permitted that to be done, that is sufficient to prove the charge. 27 CJS Disorderly Houses, Sec 14, p 324.

"The bawdy character of the house may be shown by its general reputation and that of the persons frequenting it, together with other facts and circumstances which lead satisfactorily to that conclusion. It is not necessary to show particular acts of prostitution." Drake v. State, 14 Neb 535, 17 NW 117; State v. Brunell, 29 Wis 435.

"Evidence of reputation as to the character of the house is admissible for the prosecution upon the trial of an indictment for keeping a house of ill fame." Betts v. State, 93 Ind 375. See also State v. Brunell, supra; State v. Berman, 120 NJL 381,

199 Atl 776; Howard v. People, 27 Colo 396, 61 P 595; Mahalo-vitch v. State, 54 Ga 217; Commonwealth v. Frangos, 158 Penn Super 77; State v. Hesselmeyer, 343 Mo 797, 123 SW2d 90, 95.

In the opinion on the contempt proceedings this court found the evidence sufficient to prove a violation of the temporary injunction restraining the defendant from the maintaining of a nuisance by permitting the premises to be used as a place for illicit, sexual intercourse. State v. Simpson, 78 ND 360, 49 NW2d 777.

Reference is made to the resume of the evidence there given. The court in the instant case took judicial notice thereof. The reputation of the house is also shown on the final hearing. The invitation of the inmates to passersby by rapping on the windows, men going in and out at all hours, the inmates making improper solicitations in the presence of the defendant, the admissions of the defendant on cross examination, all of these and many other circumstances clearly and satisfactorily show that the defendant was maintaining the house in question as a disorderly house and creating thereby a common nuisance.

The trial court in his memorandum opinion states the matter well when he says: "The showing made by the state is convincing that the defendant has been and is occupying and maintaining, and suffering to be maintained, a common nuisance in the residence located upon said property by permitting and suffering the practice of prostitution and assignation and lewdness in said residence located on the premises above described. There is nothing to be gained by a detailed analysis of the testimony. Indeed there is much even in the admissions of the defendant to sustain the charge made by the State."

On the trial to the court of an equitable action incompetent and irrelevant evidence, is disregarded and the action decided upon the material and competent evidence in the case. State v. Harris, 14 ND 501, 105 NW 621. On appeal appreciable weight is given to the findings of the trial court. Bearing these principles in mind we have come to the same conclusions as the trial court on the matter of abatement of the nuisance and the pay ment of attorney fee and costs.

Finally, the defendant assigns as error the inclusion in the

abatement order of a direction to the sheriff to take possession of the personal property on the premises. There is merit to that objection. After judgment the law provides for destruction of the personal property used in the maintenance of the nuisance. Sec. 42–0204 NDRC 1943. The premises were the home of the defendant and much of the personal property was necessarily used by her in the maintenance of that home. There is no description in the evidence of what personal property was used in keeping and maintaining the nuisance. The state failed to offer any proof on that question. No consideration seems to have been given to this matter on the hearing. The order actually was made without any hearing on the matter of what personal property was used in connection with the unlawful use of the premises and which should, according to law, be destroyed.

Before the destruction of personal property can be had a judicial determination must be made that such property was used in the maintenance of the nuisance.

"The power of summary abatement does not extend to property in itself harmless and which may be lawfully used, but which is actually put to unlawful use or is otherwise kept in a condition contrary to law. . . . Such forfeiture is not an exercise of the police power, but of the judicial power, i.e. the taking of the property does not directly subserve the public welfare, but is intended as punishment for an unlawful act. Hence forfeiture requires judicial proceedings, either personal notice to the owner, or at least a proceeding *in rem* with notice by publication." Freund Police Power, Nuisance, Sec 525, 526, p 557.

It can not be said that proper judicial hearing was given this matter of taking and destroying the personal property. See also State v. McCray, 48 ND 625, 186 NW 280; State ex rel. McCurdy v. Bennett, 37 ND 465, 163 NW 1063; People v. Marquis, 291 Ill 121, 125 NE 757, 8 ALR 874.

It follows that the judgment of the district court must be modified by the elimination of the personal property therefrom.

As so modified the judgment of the district court is affirmed.

MORRIS, Ch J., and CHRISTIANSON, SATHRE, BURKE, JJ., concur.