**GINTER et ux. v. GINTER et ux.**

No. 737'1.

Supreme Court of North Dakota.

March 19, 1954.

Day, Stokes, Vaaler & Gillig, Grand Forks, and Robert L. Burke, Grafton, for appellants.

Shaft, Benson & Shaft, Grand Forks, for respondents.

BURKE, Judge.

In this action plaintiffs sought a judgment declaring that a deed, absolute upon its face, executed and delivered by them to the defendants, was in fact a mortgage.

The issues in the case were tried in the District Court of Walsh County and a judgment in favor of the defendants, for the dismissal of the action was entered. Plaintiffs have appealed from the judgment and have demanded a trial anew in this court.

In the late fall of 1938, the plaintiff, Ignace Ginter, was in serious financial difficulties. He owned 220 acres of land in Walsh County, of which 130 acres were tillable. This land was incumbered by two mortgages, one to the Federal Land Bank in the sum of $2,700 and one to the Land Bank Commissioner in the sum of $2,300. At that time payments in default on both mortgages totaled $715.18 and the unpaid delinquent taxes on the land amounted to $137.

On December 1st, Ignace appealed to his brother, Hubert, for help by a loan of money sufficient to enable him to cure the defaults. This loan, Hubert refused. The substance of the subsequent conversation between the brothers is in dispute but an agreement of some sort was reached and the following day, the plaintiffs, Ignace Ginter and his wife, and the defendants, Hubert Ginter and his wife, drove to Grafton. There, the plaintiffs executed and delivered to the defendants a warranty deed, which granted fee title to Ignace Ginter's land to the defendants as joint tenants. The deed recites that the consideration was the sum of $1 and other

valuable consideration and sets forth as existing encumbrances the two mortgages mentioned above. On the same day Hubert Ginter paid the delinquent taxes on the land and filed the deed for record. The next day, December 3rd, he paid the sum of $498.78 upon the mortgages. Each year thereafter he made regular payments upon the mortgages. On November 22, 1943, he made full settlement of the Land Bank Commissioner's mortgage by a lump-sum payment of $997.98 and on October 22, 1944, he made final payment on the Federal Land Bank Mortgage by a lump-sum payment of $2,396.69. In all he made payments in excess of $6,000 for principal and interest upon the two mortgages.

The plaintiffs after executing the deed to the defendants remained upon the land as tenants of the defendants. The lease was an oral one and was the usual fifty per cent crop share contract, where the landlord furnished the seed, paid one half of the threshing expenses and received half of the crop as rent. This arrangement continued year after year from December, 1938, until October 1951, when defendants served a Notice of Termination of Tenancy upon plaintiffs. During the thirteen years plaintiffs occupied the land as tenants of defendants, Hubert Ginter, in addition to paying the interest and principal on the outstanding mortgages, paid all the taxes and insurance premiums on the property. He also arranged for clearing 27 acres of brush land, for some repairs on the buildings and the installation of R. E. A. electricity. Ignace Ginter and his sons assisted in the clearing and repair operations but all of the cash outlay in connection with these improvements was made by Hubert Ginter. During all of this time Hubert also exercised complete control over the farming operations. He decided what crops should be planted, where they should be planted, when seeding should begin and when harvesting should begin.

As related so far the facts are undisputed. There is however a direct conflict in the testimony of the parties concerning the conversations which took place

immediately prior to the execution of the deed. Hubert Ginter testified that after he had refused to make a loan to Ignace, Ignace said, "If you don't want to borrow me no money, will you buy it?" and that he replied, "Yes". He stated, "I just bought it, took it over for the mortgage". He also testified that nothing was said concerning any right to repurchase or to rent the land. Ignace testified that Hubert agreed to pay the taxes and mortgage as consideration for the deed. There is thus no material dispute between the parties concerning this conversation. Both parties say that at that time nothing was said about a right of repurchase. Ignace said that it was the next day when Hubert and his wife came to his house and that Hubert promised to deed the land back to him if he paid to Hubert what he had invested in the land. He also said, that there was no mention of the date upon which payment was to be made, that interest was not mentioned, and that he was under no obligation to pay Hubert anything unless he wanted the land back.

Mrs. Ignace Ginter testified "My understanding was we will get it back whenever we give him the money what he had paid in it," and that Hubert told her husband, "* * * You will always have a home, you are an old man." She also stated that there was no talk about Ignace owing Hubert any money and that it was entirely up to her husband to decide whether they wanted the land back or not. If they wanted the land back they had to pay Hubert what he had invested in it, if they didn't want it back they owed him nothing.

Julian Ginter, son of the plaintiffs, testified, "As much as I can remember he (Hubert) says that he will take the place over whenever we have money and we are able to repay, to pay back, that he can have the place back. Says if he could not pay well he could live there as long, stay there as long as he lived."

Several other witnesses, neighbors and relatives of the plaintiffs, testified that Hubert had told them he would let Ignace have the place back if he repaid him what he had in it.

In considering whether a deed was executed for purposes of a sale or for purposes of security, and therefore a mortgage, the essential thing is to determine the intention of the parties at the time of the transaction. Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842; Altenbrun v. First National Bank of Rock Lake, 47 N.D. 266, 181 N.W. 590, 908. The question then is: Did the parties intend that the deed should be security for pre-existing indebtedness or where, as in this case, there was no pre-existing indebtedness, did they intend to create a debt contemporaneously with the execution of the deed and intend that the deed should be security for that debt? There can be no mortgage without a debt. Miller v. Smith, 20 N.D. 96, 126 N.W. 499; Dean v. Smith, 53 N.D. 123, 204 N.W. 987; State v. Crum, 70 N.D. 177, 292 N. W. 392; Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842.

To reach a conclusion as to the intent of the parties we must look first to what the parties themselves say the nature of the transaction was.

Defendant, Hubert Ginter, states that when he refused to make a requested loan to Ignace, Ignace asked, "Will you buy the place", and he answered, "Yes." He said, "I just bought it, took it over for the mortgage." Clara Ginter, wife of Hubert, testified that she understood the transaction to be as Hubert stated and so explained it to Stella Ginter, wife of Ignace. She said "I told her we were buying it for the mortgage," and that Stella Ginter replied, "We are loosing it anyway." Thus the testimony of the defendants was that the transaction constituted an outright sale without any conditions whatsoever. Plaintiff, Ignace Ginter, testified that he understood the difference between a deed and a mortgage; that he had agreed to give Hubert a deed to the land during the conversation at Hubert's home, and that at that time Hubert made no promises to him except to pay the indebt-

edness against the land. He stated that it was the next day when defendants came to plaintiffs' home that Hubert said, "Anytime you can raise the money and pay me back I will give you the farm back." Stella Ginter corroborated her husband in this respect, and they both said that there was no talk of a debt or interest or time within which any payment was to be made and that they considered themselves under no obligation to pay Hubert anything unless they decided they wanted the farm back. They also said that Hubert told them that Ignace could live on the land as long as he lived.

As we view it, the testimony of the plaintiffs indicates that they intended that the deed given to defendants should pass title to the land and that no debt should be created by the transaction. The subsequent actions of the parties confirm this view. Immediately after the deed was executed and recorded Ignace put his brother in possession of the land by attornment to him as a tenant or share cropper. Thereafter Hubert directed the operation of the farm even in the smallest detail. He took half of the crop and paid all of the taxes. He arranged for the clearing of brush and timber land and other improvements and made all the cash outlay in connection therewith. For thirteen years Ignace recognized Hubert as the owner of the land. He said that he asked Hubert to deed the land back to him in the fall of 1943, upon payment to Hubert of what he paid out, that Hubert refused and he did not protest against the refusal. Hubert denied that this offer ever was made. If we accept as true the testimony that such an offer and refusal were made, the situation is that Hubert after demonstrating to Ignace what his interpretation of the transaction was and after Ignace's apparent agreement to that construction, paid out approximately $3,500 in settlement of the mortgages against the land.

■ Construing the testimony in the light most favorable to the plaintiffs we are agreed that it shows no more or less than a conveyance with a right on the part of the plaintiffs to repurchase. Such a transac-

tion does not necessarily give rise to a mortgage. Devore v. Woodruff, 1 N.D. 143, 45 N.W. 701; Miller v. Smith, 20 N.D. 96, 126 N.W. 499; McGuin v. Lee, 10 N.D. 160, 86 N.W. 714.

There is testimony in the record that Ignace Ginter had received an offer of $12,-000 for his farm shortly before he gave the deed to the land to his brother Hubert. Ignace said that the offer was made by John Osowski and John Osowski testified that he had made the offer and that at the time he made the offer he considered that the land was worth that much to him. Plaintiffs urge strenuously that this testimony establishes that the amount given by Hubert for the deed was grossly disproportionate to the actual value of the land and this fact is evidence that the deed was a mortgage. Other than the testimony concerning the offer of Osowski, the only evidence bearing upon value is that of the defendants who both testified that at the time the deed was executed the land was worth between five and six thousand dollars.

In considering the question of value the trial court took judicial notice of the adverse conditions affecting agriculture in the years immediately prior to 1938. He took judicial notice of the statutes, rules and regulations governing Federal Land Bank and Land Commissioner loans. He stated "Under this dire situation (which existed with respect to agriculture) the Federal Government added the Land Bank Commissioner set-up as an adjunct to the Federal Land Bank to care for loans in excess of 50% of the value of the land * * *." The Federal Land Bank and the Land Bank Commissioner mortgages upon the land were executed by plaintiff in July 1934. The Federal Land Bank mortgage secured the sum of $2,700. The Land Bank Commissioner mortgage secured the sum of $2,300 or a total of $5,000. Thus it appears that the unavoidable inference is that the Federal Land Bank appraisers when they appraised the land appraised it as $5,400.

The trial court also took judicial notice of the federal statute which required revenue stamps to be affixed to deeds in an amount equal to 50 cents for each $500 of

property value. Here, but one 50 cent stamp was attached to the deed. From this fact the trial court concluded that at the time the deed was executed, the parties appraised the land at a value which was not more than $500 in excess of the amount of the mortgages.

 Courts may take judicial notice of United States Statutes and administrative rules and regulations made pursuant thereto. Regional Agricultural Credit Corporation of Minneapolis v. Stewart, 69 N.D. 694, 289 N.W. 801. While courts may not take judicial notice of the value of a tract of land, they may use what judicial knowledge they have in evaluating the conflicting testimony as to value which is in the record. Nelson v. City of Sioux City, 208 Iowa 709, 226 N.W. 41; Moore v. Michaelson, 152 Wis. 352, 140 N.W. 28; Detroit Citizens St. Ry. Co. v. Common Council of City of Detroit, 125 Mich. 673, 85 N.W. 96, 86 N.W. 809, 84 Am.St.Rep. 589.

 Upon a consideration of the record and the matters of which he took judicial notice, the trial judge said: "Under all the circumstances present I am unable to give any weight to the testimony of John Osowski in determining the reasonable value of the land." He thereupon found the value of the land as of the date of the transaction to have been not in excess of $5,400. This valuation is in accord with the defendants' testimony as to value. The trial court's finding is entitled to appreciable weight. State ex rel. Halvorson v. Simpson, 78 N.D. 440, 49 N.W.2d 790; Larson v. Cole, 76 N.D. 32, 33 N.W.2d 325. And we are satisfied that upon the entire record it should be sustained and adopted as the finding of this court.

Upon the question of whether the transaction under consideration created a debt plaintiffs rely greatly upon the decision of this court in the case of Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842, 850, wherein we said:

> "In this case when Topp advanced the money to the sheriff to redeem Mechtle's land from foreclosure, there instantly arose an implied obligation on the part of Mechtle to repay the money so advanced."

Plaintiffs argue that upon the same reasoning it should be said that when Hubert Ginter satisfied the mortgages upon the land described in the deed given to him by Ignace, an implied obligation on the part of Ignace to repay the money so disbursed arose. The argument might be valid if the quesion of whether a debt was created depended upon circumstances alone or upon conflicting testimony. Here, however, as has been pointed out, all parties in their testimony disavow the creation of any debt. We cannot say that circumstances imply that which the parties deny.

 It appears therefore that plaintiffs conveyed the land in question to the defendants by warranty deed; that the consideration paid by defendants was the reasonable value of the land; that there was a promise on the part of defendants to reconvey the land to plaintiffs, when and if the plaintiffs ever decided they wanted the land back and paid to defendants what they had invested in the land but that the parties intended that no debt should be created for which the deed would stand as security.

Upon consideration of the whole record we have concluded that plaintiffs have failed to establish that this deed was executed and delivered as a mortgage. The judgment of the trial court is therefore affirmed.

MORRIS, C. J., and SATHRE and GRIMSON, JJ., concur.