[File No. 7306]

GEORGE GILLIES, Charles Gillies, and Thomas Estad, Guardian Ad Litem of Gene Estad, a Minor, Respondents, v. EDWARD RADKE, Herbert Radke, and Stanley Radke, Appellants.

(54 NW2d 155)

Opinion filed May 27, 1952.  Rehearing denied July 12, 1952

*Shaft & Benson,* for appellants.

*DePuy & Homme,* for respondents.

MORRIS, Ch. J. This suit originated as an action for an injunction wherein the plaintiffs allege they are the fee simple owners of a quarter section of land in Pembina County. The original complaint sets forth: "That plaintiffs are entitled

to the possession and use of the said premises but that the defendants have wrongfully and unlawfully interfered and wrongfully and unlawfully threaten to interfere with plaintiffs' possession and use thereof and wrongfully and unlawfully threaten to deprive and are depriving the plaintiffs of their right to crop and farm said premises; that the defendants have trespassed upon said premises and continue to trespass and assert that they, the said defendants, are going to crop and farm said premises and that they will not permit the plaintiffs the use, occupancy and farming of said premises during the farming season of 1951."

After alleging irreparable injury, the plaintiffs pray that the defendants be enjoined from interfering with the plaintiffs' possession, use, and occupancy and from interfering with the cropping and cultivation of the premises and for further just relief. This action was commenced April 28, 1951, and on the same day the plaintiffs made application to the district court for a temporary injunction supported by the affidavit of the three plaintiffs to the effect that the allegations of the complaint were true and seeking an order of the court restraining the defendants from interfering with the preparation of the premises for cropping, seeding, and cultivation thereof, pending the determination of the suit. The application was accompanied by a bond in the sum of $1,000.00. The judge to whom the application was made, forthwith granted a preliminary injunction restraining the defendants from in any manner interfering with the plaintiffs' possession, use, and occupancy of the premises. The court also directed that the defendants show cause on May 9, 1951, why this order or one of like purport should not be continued until final judgment, and further provided that: "until the foregoing Order is modified let the same be in full force and effect."

On May 1, 1951, the defendants answered by way of a general denial and set up a counterclaim in which they alleged that they had been in continuous, open, and notorious possession of the premises since April 1946 under a lease from Nellie V. Nies, the then owner, and that the lease contained an option to purchase in favor of the defendant Edward Radke, and that Edward Radke

exercised his right to purchase under the lease. They also alleged that Edward Radke tendered the plaintiffs $12,000.00 which he is still ready and willing to pay upon execution of a conveyance of the premises; and that they gave notice to the plaintiffs of further intention to farm the premises in 1951. The defendants prayed for a dismissal of plaintiffs' cause of action and asked that they be required to receive the sum tendered in support of the defendant's exercise of the option and deed the premises to the defendant Edward Radke, and for further equitable relief. A copy of the lease under which the defendants claimed was attached to and made part of the answer.

The hearing on the order to show cause was held on May 10. The defendants appeared and by the affidavit of Stanley Radke and Herbert Radke set forth the rights which they claimed under the lease and stated that the defendants had been in open and notorious possession of the premises since April 1946 and were still in possession at the time the action was brought, and "Plaintiffs knew or should have known of Defendant's right to farm premises for the crop year 1951 and to purchase said premises at the time of the aforesaid conveyance to them, and therefore took the said conveyance subject to those rights."

Mr. Homme appeared for the plaintiffs and Mr. Benson for the defendants. The following colloquy was had:

"Mr. Benson: Your Honor, as will more fully appear from the affidavit of cause, I would like to point out to the Court the defendants in this action have been in continuous and open possession of the premises in dispute over a period of something like five years. At the time this action was brought they were in possession of these premises by virtue of a lease which was still in full force and effect. They have been wrongfully evicted from the premises and we are considering the plaintiffs in this action no better than trespassers under the law, but we are perfectly willing that the case be tried on its merits. We are willing to abide the decision of the case in principal when it is tried but we do state that the wrongful eviction of the defendants is resulting in substantial damages to them, and we ask that if this injunction remains in force that the bond be substantially raised, and

if the bond is substantially increased, we would, as I say, be willing to abide by the trial of the case, and I presume it would be at the June term of the District Court.

"The Court: What have you to say, Mr. Homme?

"Mr. Homme: It is my understanding then, that there is no objection to the temporary injunction as it now stands, and the only motion made by the defendant is for an increase in the bond.

"The Court: Is there any objection to that?

"Mr. Homme: I can see no legal reason why the plaintiffs should object to a change in the amount of the bond as set by the Court.

"The Court: What is your idea about the amount of the bond, Mr. Benson?

"Mr. Benson: Your Honor, I think we are going to be able to prove that the defendants are being wrongfully kept off the land, and if we do, that the damages would be substantial. We feel the bond should be no less than $5000.00.

"The Court: What is your answer to that, Mr. Homme?

"Mr. Homme: We, of course, refute the statement as to the defendants' rights. They are not in issue right now anyway. I don't believe the defendants could show, at this time, that if they had a substantial and lawful claim to the quarter, that they could also show that the interference, as they claim, being made by the plaintiffs would any where near approach that in damages to them. Besides that would depend upon what the nature of their claim was."

"The Court: Can you gentlemen agree upon the amount of the bond? Mr. Benson is not satisfied with the original bond. Mr. Homme has no objection to raising the bond. That's the only dispute. Can you gentlemen agree upon the amount of the bond? We will take a recess for ten minutes and you can talk it over."

Court convened pursuant to recess taken, and after an information discussion the following proceedings were had:

"The Court: Upon and pursuant to the foregoing, it is ordered that the temporary injunction heretofore issued in the above

matter shall remain in full force and effect until the further order of the Court."

The matter came on for trial on the merits on June 27, 1951, before Honorable Harold B. Nelson, who was not the judge before whom the preliminary proceedings were had. The court found that the plaintiffs were the owners of the premises, subject to the lease which gave the defendants the right of possession for the year 1951, and that they are entitled to the use, occupation, rents, and profits of the land for the farming season of 1951. The court also found: "That the entry of the plaintiffs upon the premises described herein was made pursuant to and under the authority of an injunction from the District Court under which the defendants were restrained from the further use, occupation, rents and profits." The court further found that the annual rental provided for in the lease was $325.00. Judgment was entered pursuant to these findings on August 2, 1951, and provided that the plaintiffs were entitled to reimbursement for the amount of seed furnished and labor performed in planting the crops then growing upon the land.

On August 6, 1951, testimony was taken with respect to the items for which the court had determined the plaintiffs were entitled to reimbursement. The court then made supplemental findings of fact, conclusions of law and order for judgment, pursuant to which a supplemental judgment was entered on September 1, 1951, decreeing that the plaintiffs were entitled to the following items:

| | |
|---|---:|
| Cash rental for 1951 | $325.00 |
| "Sixty (60) bushels Premier Wheat @ $2.60 | 156.00 |
| Seventy-five (75) bushels Rival Wheat @ $2.50 | 187.50 |
| Twenty-two and one-half (22½) bushels Flax @ $6.50 | 146.25 |
| Spraying (110 acres @ $.681) | 75.00 |
| Crop insurance (110 acres @ $1.00) | 110.00 |
| Cultivating, disking, harrowing, plowing and seeding (110 acres @ $3.50) | 385.00" |
| TOTAL | $1,384.75, |

which were made a lien upon the crop.

The defendants have appealed from the judgment entered on August 2 and the supplemental judgment entered on September 1, 1951, and demand a trial de novo and a review of the questions of fact specified in the statement of the case, which are set forth as follows:

"1. Were the Plaintiffs acting in good faith when they sought and obtained a preliminary injunction in District Court.

"2. What rights did the Plaintiffs have to protect that necessitated resort to a preliminary injunction.

"3. Did the preliminary injunction preserve the status quo, or

"4. Were the Defendants in rightful and lawful possession of the premises in dispute and did the preliminary injunction dispossess them and place Plaintiffs in possession.

"5. Were the Defendants wrongfully dispossessed from the premises in dispute and if they were wrongfully dispossessed, what damages were suffered by reason of such dispossession.

"6. If, after review of the five foregoing questions of fact, the court deems it material to a decision in the case:

"(a) What 'out-of-pocket costs' would Defendants have incurred had they been permitted to crop the premises in the spring of 1951.

"(b) What was the reasonable value of seed and other items furnished by plaintiffs in cropping the premises."

The appellants do not ask for a review of that part of the judgment which determines that the plaintiffs are the owners of the premises, and they are, of course, satisfied with that part of the judgment which determines that the appellants are entitled to the use, occupation, rents and profits of the land during the farming season of 1951. The appeal is directed against the reimbursement of the plaintiffs. The appellants contend that the plaintiffs are entitled to no reimbursement for their expenditures in connection with the farming operations because they were trespassers acting in bad faith. The appellants also contend that if the plaintiffs are entitled to reimbursement, the court erred in allowing sums that were too large and in excess of the actual out-of-pocket costs to the plaintiffs. No question is raised as to the propriety of the form of action to secure the

relief sought. See Farmers Union Oil Co. v. Kilgore, 71 ND 199, 299 NW 318.

The respondents question the procedure by which this appeal is taken and assert that the appeal is only from part of the judgment. They further assert that the appellants cannot accept valuable benefits under the judgment and at the same time challenge its correctness on appeal. The notice of appeal states that the appeal is taken from the judgment of August 2, 1951, and the supplemental judgment entered September 1. The appeal is clearly taken from the whole of both judgments. The review sought by the appellants is limited to those questions of fact specified in the settled statement of the case. The procedure thus followed is in accordance with Section 28–2732 NDRC 1943, which in part provides: "A party desiring to appeal from a judgment in any such action shall cause a statement of the case to be settled within the time and in the manner prescribed by chapter 18 of this title, and shall specify therein the questions of fact that he desires the supreme court to review, and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court." See Plott v. Kittelson, 58 ND 881, 228 NW 217. The procedure followed by the appellants properly presents for review and trial de novo the questions of fact specified in the settled statement of the case.

In support of their contention that the appellants cannot accept benefits under the judgment and then appeal from it, the respondents cite Easton v. Lockhart, 62 ND 767, 89 NW 75. The record before us does not show the conduct of the parties subsequent to the entry of judgment. No motion to dismiss the appeal was made and no showing of acceptance of benefits has been presented to this court. The question was not suggested to us until the respondents' delayed brief was filed after oral argument in which they did not participate. The question of acceptance of benefits is not before us.

The first five specifications upon which the appellants ask a review go to the question of whether the plaintiffs and respondents were trespassers and therefore entitled to no reimbursement. We agree with the appellants' legal premise that if the

respondents performed the work and made the expenditures for which they claim reimbursement while they were trespassers they are entitled to nothing. In Stone v. Bartsch, 76 ND 721, 39 NW2d 1, paragraph 6 of the syllabus by the court, we said: "Party, who enters upon land as a trespasser and sows crops thereon, acquires no title or interest in such crops." See also Wadge v. Kittleson, 12 ND 452, 97 NW 856.

The questions upon which review is demanded present no question regarding the court's findings that the plaintiffs entered upon the premises pursuant to and under authority of an injunction issued by the district court. These questions, aside from the amount allowed for reimbursement, deal solely with the good faith of the plaintiffs in seeking and obtaining the preliminary injunction and the validity of the act of the court in granting it.

The record shows that when the plaintiffs made their ex parte application for an injunction on April 28, 1951, they had obtained a valid deed to the premises, which entitled them to possession as against the grantor. They also knew that the appellants had farmed the land for several years prior thereto and had started preparing the land for crop for the year 1951. The defendant, Herbert Radke, testified that while he was cultivating the land George and Charles Gillies came on the premises, challenged his right to farm the land, and Charles invited him off the tractor for a fight. No physical encounter took place. Herbert kept on working and told the Gillies brothers he would do so until he was legally put off. As he was going out to work the next noon the sheriff served the injunction.

Stanley Radke testified that in the fall of 1950 he told George Gillies that his brother Edward Radke had a lease and an option to buy the land. George. Gillies said he might buy it even if he couldn't farm it. It is clear that the plaintiffs knew that the defendants claimed to have both a lease and an option to purchase from the former owner that were superior to the rights of plaintiffs in the land. The land had no buildings on it, but at the time the application for the injunction was made the defendants had started their spring farming operations on the land and the previous fall had disked some fifty acres in preparation for further operations in the spring of 1951. The defend-

ants were in possession, which the plaintiffs well knew. On the other hand, the plaintiffs claimed the right to possession by virtue of their deed from the former owner. The plaintiffs, knowing these facts, instituted an action to enjoin the defendants from interfering with the plaintiffs' possession, use, and occupancy, cultivation, and cropping of the land, and at the same time applied for a temporary injunction which the court issued forthwith upon showing made as heretofore set forth. A hearing was had on May 10, 1951, as to whether the temporary injunction should be continued. During the interval between April 28 and May 10 the plaintiffs started farming operations on the land and seeded some wheat. On May 10 the court continued the temporary injunction and the plaintiffs remained in possession until after the trial on the merits on June 27, 1951.

A wilful trespasser on lands acquires no interest in crop which he sows thereon during the course of his trespass as against one lawfully entitled to possession. The defendants argue that the plaintiffs were trespassers despite the fact that, as the trial court found, they entered upon the premises pursuant to and under authority of an injunction of the district court. In support of this proposition they contend that the plaintiffs are not entitled to the protection which the injunction would ordinarily afford them because they were not acting in good faith; that they had no rights that necessitated resort to a preliminary injunction; and that the injunction disturbed rather than preserved the status quo and divested the defendants of lawful possession.

At the time the injunction was applied for the defendants were in disputed possession of the premises. Both parties were claiming the right to farm the land for the season of 1951. The controversy at that time, however, embraced more than the mere right to possession of the land. The plaintiffs had bought it, but the defendants challenged the plaintiffs' title and claimed that they not only had a lease but they had an option to purchase which they had exercised, and in their counterclaim asked that the plaintiffs be required to convey the premises to the defendant, Edward Radke, pursuant to the terms of the option. The trial court ultimately determined that the plaintiffs' title was

valid, subject to the defendant's lease for 1951. Thus it appears that there was a bona fide dispute between the parties, both as to title and as to possession of the premises. The controversy was ultimately resolved in favor of the plaintiffs as to title and in favor of defendants for possession during the crop year 1951.

The showing upon which the court issued the temporary injunction ex parte was somewhat meager. It consisted of the complaint which we have outlined and an affidavit realleging the contents of the complaint and further stating that a continuance by the defendants of their acts and threats would cause irreparable injury to the plaintiffs.

The plaintiffs also tendered a bond in the sum of $1,000.00 to indemnify the defendants against damage that they might sustain by reason of the injunction if the court should finally decide that the plaintiffs were not entitled thereto. On the strength of this application and showing the injunction was issued which embodied an order to show cause on May 9, 1951, why the injunction should not be continued until the final judgment. The hearing upon the order to show cause was had on May 10, when the defendants presented their showing and claim to right to possession in the form of an affidavit to which they attached a copy of the lease containing the option and in which they again claimed the right of the defendant, Edward Radke, to purchase under the option. In the affidavit it is stated:

"Plaintiffs knew or should have known of Defendant's right to farm premises for the crop year 1951 and to purchase said premises at the time of the aforesaid conveyance to them, and therefore took the said conveyance subject to those rights."

Section 32–0603 NDRC 1943 contains the provision that; "The injunction may be granted at the time of commencing the action, or at any time afterwards before judgment, upon its appearing satisfactorily to the court or judge, by the affidavit of the plaintiff, or of any other person, that sufficient grounds exist therefor."

This provision vests in the trial court the discretion to determine in the first instance whether a temporary injunction shall be granted upon the giving of proper security. See Section 32–0605 NDRC 1943. This court has declared that the purpose

of a temporary injunction is to preserve the status quo and protect the rights of the plaintiff pending a determination on the merits. Brace v. Steele County, 77 ND 276, 42 NW2d 672.

Dickson v. Dows, 11 ND 404, 92 NW 797, involved an appeal from an order dissolving a temporary injunction. In affirming the trial court's action this court said: "The practical situation which confronted the trial court was whether the defendant or the plaintiff should have the possession of the land for the purpose of seeding, and pending the action. Under the circumstances disclosed, the trial court very properly refused to interrupt the defendant's possession, and to prevent her from exercising her rights over the land. This was a proper exercise of discretion, and to have done otherwise would, we think, have been an abuse of discretion. This conclusion is based upon the assumption that the case is one where the trial court might or might not, in its discretion, grant a preliminary injunction; but we think the case clearly comes under the general rule that a preliminary injunction will not be granted to take property out of the possession of one party, and transfer it to the possession of another."

It may be as the defendants contend that the trial court improvidently issued the temporary injunction and that instead of preserving the status quo it disturbed it by placing the plaintiffs in possession of the land. However, both the original issuance of the injunction and its subsequent continuation at the close of the hearing of May 10 were orders issued by a court that had jurisdiction of both the subject matter and the parties. No appeal was taken from the order continuing the injunction, as might have been done under the provisions of Section 28-2702 NDRC 1943. It would seem that acts performed by the plaintiffs that were contemplated by these orders of the court can hardly be termed acts of trespass, even though the orders may have been erroneously issued and would have been reversed on appeal.

It is also pointed out that when the case was tried on the merits the defendants prevailed on the question of possession during 1951, although they failed in their contention with respect to the title and it is urged that the plaintiffs, despite the action of the court, were asserting their right to possession in bad faith.

The fact that they were finally determined to be wrong in their assertions does not indicate that those assertions were made in bad faith. They had a right to assert and litigate what they thought to be their rights and cannot be presumed to know that the ultimate decision on the merits would be against their right to possession. As said by the Supreme Court of Georgia in Tennessee, Alabama & Georgia Railway Co. v. Zugar, 193 Ga 386, 18 SE2d 758: "The application of legal maxims, such as that every one is presumed to know the law, can easily be overextended. While it is true enough that a trespasser who has innocently misjudged the strength of his own title can not exculpate himself from the penalty of the actual damages merely because he thought he was right when he was in fact wrong, the maxim does not say or suggest that if one misjudges the law he necessarily does so wilfully and in bad faith, and should be mulcted in punitive damages as for wilful misconduct."

In this case the plaintiffs misjudged the law. They made an application, put up security, and obtained a temporary injunction under which they entered upon the premises and made certain expenditures in connection with preparing the soil for the crop and planting it. Later, and before the crop was harvested, it was determined on a trial of the merits that they were not entitled to possession, a determination which they do not now contest. The defendants contend that they were trespassers despite the fact that the trial court made two injunctional orders, the second after a hearing at which the defendants appeared, demanded and were granted an increase in the indemnity bond provided by the plaintiffs.

Reference to the statements of counsel and the court at the hearing on the order to show cause, which we have already quoted, discloses that the chief concern of the defendants was to have a bond sufficient to indemnify them for the damages that they might sustain by reason of the injunction. Such a bond as our statute (32-0605 NDRC 1943) requires does not cover punitive damages. Baker v. Craig, 127 Kan 811, 275 Pac 216; 28 Am Jur, Injunctions, Sections 343 and 344; 43 CJS, Injunctions, Section 281; Sutherland on Damages, 4th Edition, Section 520; Sedgwick on Damages, 9th Edition, Sections 685 and 685a. See

also High on Injunctions, 4th Edition, Section 1648. It is clear that punitive damages were not contemplated by the defendants at the time the temporary injunction was continued by order of the district court. The forfeiture by the plaintiffs of their expenditures in connection with the planting of the crop is in the nature of a penalty. It is retaliatory rather than compensatory.

Upon the trial of the merits the court found that the plaintiffs entered upon the premises pursuant to the authority of an injunction from the district court. That court did not treat the plaintiffs as trespassers, but in the interest of equity determined that they were entitled to reimbursement for the cost of seed which they planted on the land and the labor connected with seeding operations. The labor and seed went to produce the crop which was awarded in toto to the defendants. This seed and labor took the place of the seed and labor that the defendants would have furnished and expended had they remained in possession. Under all the circumstances here presented, it does not appear that the plaintiffs were wilful trespassers and must forfeit that which they furnished in furtherance of the production of the crop. Such profits as there be in the crop go to the defendants. We see no error in the trial court's determination to reimburse the plaintiffs.

Defendants' specification number 5 deals with damages suffered by the defendants by reason of their dispossession. The only measurable damage established by the evidence is for disking fifty acres that had been disked by the defendants and not put into crop. The possession of this acreage was denied to the defendants by the injunction until the entry of judgment dissolving the temporary injunction on August 9, 1951. By that time it was too late for the defendants to crop this land. The evidence of Gene Estad shows that disking is worth one dollar per acre, thus the defendants' damage to the extent of fifty dollars has been established with respect to the land not cropped. It represents the value of the defendants' work which was lost as the result of their being barred from the land by virtue of the injunction.

Defendants' specification number 6 challenges the amount of

the award made to the plaintiffs for reimbursement and the correctness of the items constituting this award. We have previously set forth these items. The trial court allowed the amounts which the plaintiffs testified they had expended for seed, in connection with which he made this comment in his memorandum opinion: "The amount of seed per acre is unusually large and somewhat in excess of what is usual and customary. However, there is no competent evidence in the record showing that any less amount was actually seeded, nor is there any competent evidence showing that the amounts claimed to be paid for the seed by plaintiffs was not actually paid by them. The court does not believe that in the farming of the lands the plaintiffs were acting in bad faith, but, rather, that they were farming the land as they would their own, because when the farming operations were being carried on they fully expected to be adjudged the owners of the crop, as well as the land." The evidence indicates no error with respect to these items.

The defendants complain that the trail court allowed too large an amount to reimburse the plaintiffs for tilling the land and planting the crop. As the trial court points out, the evidence, consisting chiefly of the testimony of interested parties, is conflicting. It appears that Gillies Brothers planted 30 acres of Premier wheat and Estad planted 50 acres of Rival wheat and 30 acres of flax. Thus 110 acres out of the quarter section were planted to crop for which the court allowed the plaintiffs $3.50 per acre, which is a figure between the extremes testified to by the contending parties. From our examination of the record we cannot say that the court erred in this respect. The amount allowed appears to be reasonable under all the evidence in the case.

The court allowed for spraying 110 acres of crop at $.681 per acre, or $75.00. There is some question as to whether the flax was sprayed or not. Gene Estad who planted the flax and owned the land on which it grew testified definitely that the flax was not sprayed. We think the plaintiffs are bound by that testimony and that the court should have allowed for the cost of spraying only the 80 acres of wheat.

The defendants contend that since 50 acres of the land were not cropped by the plaintiffs and that the defendants were prevented by the injunction from having possession of it until the cropping season had passed, rent for the 50 acres should not have been charged against the crop that was raised on the remaining 110 acres. There is justice in that contention. The trial court in his memorandum opinion indicated his intention of leaving the plaintiffs in possession of this 50 acres after he dissolved the injunction, for in his memorandum decision of August 9, 1951, he says: "Plaintiffs, however, may go upon any portion of the premises not seeded to crop this year for the purpose of carrying on normal farming operations or preparing the unseeded portions for crop next year." This provision does not appear to have been incorporated in the findings or judgment. Nevertheless, it is clear that the defendants were deprived of the possession of this portion of the land, at least for the cropping season, and they should not be charged rent for it.

The court also allowed crop insurance on 110 acres at one dollar per acre. The evidence shows that the Radkes did not insure their crop on the land that they farmed that year and that they did not intend to and would not have taken out crop insurance covering the land in dispute. It is an item of cost which would not have been incurred in raising the crop had the defendants remained in possession. It would seem, therefore, to be an improper item of reimbursement. It was incurred solely as a result of the action of the plaintiffs in taking possession, was not necessary to the production of the crop and added nothing to the value of the crop which the defendants are entitled to receive under the terms of the judgment. This item will be disallowed.

A statement of the amount which we have determined the plaintiffs should be allowed by way of reimbursement is as follows:

Cash rental for 110 acres .................. $223.45

60 bushels Premier Wheat @ $2.60 per bushel 156.00

75 bushels Rival Wheat @ $2.50 per bushel .. 187.50

22½ bushels Flax @ $6.50 per bushel ........ 146.25

Spraying 80 acres @ $.681 ................ 54.50

Tillage of 110 acres @ $3.50 per acre ....... 385.00

Total ............................. $1,152.70

Less damages disking 50 acres @ $1.00 per
acre ............................... 50.00

Amount of plaintiffs' reimbursement ....... $1,102.70

The judgment appealed from will be modified in accordance with the foregoing statement and as so modified is affirmed.

GRIMSON, BURKE, SATHRE and CHRISTIANSON, JJ., concur.