Leona GUNSCH, Plaintiff and Respondent,

v.

Dan GUNSCH, John Gunsch, and David Gunsch, Defendants and Appellants.

No. 7397.

Supreme Court of North Dakota.

Dec. 18, 1954.

Rehearing Denied April 21, 1955.

J. K. Murray, Bismarck, for appellants.

Floyd B. Sperry, Golden Valley, for respondents.

GRIMSON, Judge.

This is one of a series of related actions arising out of the unfortunate troubles of the David Gunsch family. The plaintiff, Leona Gunsch, commenced this action on April 2, 1953, for an injunction, for an accounting and to quiet title. She alleges that she is the owner of the South Half (S½) and the Northeast Quarter (NE¼) of Section Thirteen (13), and the South Half (S½) of the Southeast Quarter (SE¼) and the South Half (S½) of the Southwest Quarter (SW¼) of Section Twelve (12), all in Township One Hundred Forty-three (143, North, Range Eighty-nine (89) West of the 5th. P.M. Mercer County, North Dakota, subject to a balance due on the purchase price; that said land had been bought by her husband, Tony Gunsch, from his father, David Gunsch; that she obtained a divorce from Tony Gunsch in which action the court decreed and transferred unto her said real estate subject to the rights of said David Gunsch under the contract for deed; that there has been paid on said contract $4,000; that plaintiff has offered to pay the balance of $12,000 and interest which was refused by said David Gunsch; that the defendants

742

have, without any authority or right, removed the 1952 crops from the premises and pastured the land; that the defendants kept her tenants off of the premises by threats of force and violence; that they removed a portion of the buildings therefrom and continued repeated trespasses thereon; that they have instituted numerous legal proceedings for the purpose of vexing and annoying the plaintiff and that unless restrained they will continue to keep the plaintiff and her tenant from possession of the property and deprive her of the income therefrom; that she will suffer irreparable damages from their actions and that she has no adequate remedy at law. She asks for a temporary injunction pending the action and a permanent injunction thereafter restraining the defendants from interfering with the plaintiff or her agents in the possession and enjoyment of these premises. She further asks for an accounting of the crops for 1952 and that the defendants be required to set forth their claims to the land and that the same be declared null and void. That has been done in other actions.

Upon the filing of the complaint and the supporting affidavits of plaintiff's tenant and her attorney, an order to show cause why a temporary restraining order should not be granted was issued. The court concluded, "That it satisfactorily appears to the court that good cause exists for an injunction, pending said action, and that from said complaint and said affidavits, and the records herein, the defendants shall be so restrained and enjoined." On the hearing on the order to show cause the restraining order was continued.

The defendants filed a joint answer alleging ownership in the land in question in the defendants, John Gunsch and Dan Gunsch, subject to the contract for deed with the defendant, David Gunsch; alleging they purchased the land and some cattle and machinery from Tony Gunsch on or about the 1st day of April 1951 and that prior action is pending to determine the conflicting claims thereto and counterclaiming for

the value of improvements in the way of breaking and seeding the land for 1953.

The evidence shows that Tony Gunsch had farmed the land in question for several years and was in possession thereof. On February 19, 1951, Tony bought it from his father, David Gunsch, on contract, for $16,000. On March 10, 1951, the plaintiff Leona Gunsch, Tony's wife, commenced a divorce action against him. On that date a temporary injunction was issued restraining Tony from disposing of any of his property. On June 25, 1952, the divorce action was heard and on June 28, 1952, a judgment was filed granting Leona Gunsch a divorce from Tony Gunsch and in a division of the property she was awarded Tony's interest in the section of land bought by him from his father, subject to that contract of purchase and some cash, cattle and household furniture. The evidence further shows that the defendants, after the divorce was granted put forth the claim that John Gunsch and Dan Gunsch had bought the land from Tony on March 15, 1951. Tony denied that and made arrangements for the farming of the premises in 1951.

In the spring of 1951, Tony leased 60 or 70 acres to one Carl Neuberger, and was to get one-third of the crop. Then he made arrangements for the seeding of the remainder of the fields and secured the assistance of Neuberger and his brothers, Dan Gunsch and John Gunsch, to seed the crop. Tony was to receive one-third of the crop Neuberger seeded and harvested. His brothers were to use Tony's combine in harvesting the crop they put in for him and have the use of that combine for their own crop in return for the assistance to Tony in raising the crop that year. Tony was to receive all of the crop. Out of that crop $4,100 was paid to David Gunsch as a first payment on the land contract. Tony did not receive anything.

In the spring of 1952 Tony continued his attempt to exercise control and entered into a lease with Carl Neuberger for the farming of most of the farm land on the section.

David, Dan and John, however, interfered with the carrying out of that lease. The defendants, Dan Gunsch and John Gunsch, entered upon the land early in the spring and farmed it in 1952.

As soon as Leona Gunsch acquired Tony's interest in the land by divorce decree in 1952, she engaged one Kees to look after this section of land and the cropping of it for her. John Gunsch, however, interfered and told Kees to stay away from that land in rather threatening language.

On January 22, 1953, Leona leased the land to one Fred Flemmer. He made preparations to farm it but was prevented by John and Dan Gunsch. He testified they told him that, "If I didn't want to get hurt I had better stay out." Again Dan and John entered upon the land early. "They came out like a cyclone and they came out with five tractors, didn't give anyone a chance." Counsel for Dan and John wrote Neuberger letters warning him to keep off the land or "you are liable to get hurt."

In addition to the claimed trespasses by the defendants upon the real property in question they instituted two actions against plaintiff involving her possession of and right to the cattle that had been awarded to her by the divorce decree. Furthermore, John Gunsch and Dan Gunsch brought an action to determine adverse claims to this land, and David Gunsch brought an action to foreclose the contract.

All these actions, together with the instant case, were by stipulation, tried together in July 1953. No objection was made to the form of any of the actions. Different judgments were entered determining the principal issue raised in each case. All of these actions were decided favorably to the plaintiff in this action and have been appealed to this court.

In the case of Gunsch v. Gunsch, N.D., 67 N.W.2d 311, 325, to determine adverse claims, this court very thoroughly discussed the evidence as bearing on the ownership and possession of the premises. Reference is hereby made thereto. Dan and John,

after the divorce decree, claimed to have bought under an oral contract the premises and the other property involved, from Tony Gunsch on March 15, 1951. On that this court says:

"The evidence is voluminous, often conflicting, contradictory and even confusing. When the evidence is considered as a whole it does not spell out a clear-cut agreement between th parties. If any negotiations took place it appears that whatever talks there were between the plaintiffs and Tony and their father, David Gunsch, their primary purpose was to attempt to keep Leona Gunsch from procuring an interest in Tony's property; but the negotiations, whatever they were, never amounted to an oral agreement between the parties. * * * The plaintiffs obtained possession of the property without the knowledge and consent of Tony Gunsch; retained possession in 1952 and 1953 by coercion and threats. Their possession of the land * * * was illegal and they are, and have been trespassers upon the property."

The court found:

"Leona Gunsch is the equitable owner of the section [the land in question] as the successor in interest of Tony Gunsch pursuant to the judgment and decree granted her in the divorce action against Tony Gunsch and by which she received the interest of Tony Gunsch in the contract for deed with his father, David Gunsch, involving the 'section' and she is entitled to immediate possession thereof".

This court thereupon determined the conflicting claims to this real estate in favor of the plaintiff, Leona Gunsch. Her ownership, therefore, is established and the claims of John Gunsch and Dan Gunsch found invalid. It is further held therein that they were trespassers on the land in 1951, 1952 and 1953.

In the action by David Gunsch to foreclose his contract this court found that

Leona Gunsch as successor of Tony's interest in that contract had the right to pay the · balance due thereon. Gunsch v. Gunsch, N.D., —— N.W.2d ——.

■ Leona Gunsch has, therefore, been found . to be the owner of the real estate since June 28, 1952. It followed that the defendants were repeated trespassers upon the land; that they had interfered with the plaintiff's right to the enjoyment and the fruits of said land. The evidence fully warrants that finding. The evidence also shows the continued threat of the defendants to trespass upon such property and to deprive the plaintiff of the fruits of its production for the year 1953. The plaintiff had been protected by a preliminary restraining order up to the time of entry of judgment in this case. With the entry of that judgment the preliminary restraining order ceased and was merged in the final judgment. Martinson v. Marzolf, 14 N.D. 301, 307, 103 ·N.W. 937. The danger of trespass by the defendants, John Gunsch and Dan Gunsch, and the threatened loss to the plaintiff of the 1953 crops clearly continued. It would at least be very doubtful if she could find out how much grain was raised or what became of it. A remedy for damages would be insufficient as it would be extremely difficult to ascertain the amount that would afford adequate relief. In such cases Section 32–0504, NDRC 1943, authorizes a final injunction.

■ The jurisdiction to prevent threatened disturbance in the peaceable use and enjoyment of real property is inherent in a court of equity. Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170. A court of equity will protect the rightful claimant's possession or right to possession against a trespasser. Zimmerman v. McCurdy, 15 N.D. 79, 84, 106 N.W. 125.

. "After the establishment of his legal right and of the fact of its violation, the plaintiff is in general entitled as of course to a perpetual injunction to prevent the recurrence of the wrong, . unless there be something special in the. circumstances of the case, such as laches, · or where the interference with the plaintiff's right · is trivial." Kerr· on Injunctions, p. 32. ·

■ In the instant case there are no such circumstances. Clearly the · court had the right to order a final injunction in the instant case.

### Contempt

On the 28th day of May 1953, Leona Gunsch filed her affidavit setting forth the issuance of the preliminary restraining order in this matter and its due service upon the defendant. . She then claims that the defendants had violated such restraining order and proceeded upon the premises for farming operations thereon, and also that they had taken steps to prevent her tenant from operating said premises. She alleges further that the defendants kept a lock on the gate to the buildings on the premises; erected a sign for the purpose of keeping plaintiff off of the land.

On the 18th day of July 1953, an order to show cause was issued thereupon by Judge .Wigen. Before it could be heard, however, he was disqualified and Judge Amundson designated in his place. Leona Gunsch filed another affidavit alleging defendants had further entered upon the premises for the farming thereof, and she prayed for an order to show cause directing Dan Gunsch and John Gunsch to show why they should not be punished for contempt.

Upon the affidavits of Leona Gunsch, the summons, complaint and all the files in the case, Judge Amundson granted an order to show cause on the 22nd day of July 1953 at 10:00 o'clock A.M. why the defendants should not be punished for contempt of court by farming the land in question in the spring of 1953.

This order to show cause was served upon the defendants. John Gunsch and Dan Gunsch filed a return to said order denying that it· had been properly served; admitting the farming of the land under the claimed purchase from Tony and claiming that counsel had advised them that they

were equitable owners of the property; that injunction could not be used to throw them off; that they were in possession and farming the land under contract of purchase; that the restraining order was void and of no effect, and that they were absolutely safe to stay in possession of said land; that the plaintiff had never attempted to take possession; that Fred Flemmer told them of his lease but that they told him they had bought the land from Tony; that they, in good faith, took the advice of their attorney and continued in possession, farming the land.

Upon the joint trial of the cases it was stipulated:

"That between the parties in the three (3) contempt proceedings now pending before the court, that all the evidence received in the trial of the six (6) cases which we are now trying jointly, be considered by the court in determining these contempt actions;"

and it was further stipulated:

"That all the affidavits of either opposing parties be admitted in evidence and that the identification of them by exhibits are hereby waived, that the respective exhibits are in the files of the cases bearing their respective titles."

■ Upon this submission of the contempt cases the court passed upon the matter. Clearly, if there was any irregularity in the service of the order to show cause it was waived.

The restraining order granted by Judge Wigen on April 4, 1953 reads as follows:

"It is further ordered that the defendants, Dan Gunsch, John Gunsch, and David Gunsch are hereby, until further order of this court, enjoined and restrained from entering or going upon said premises, or any part thereof, which are described in the complaint, from trespassing thereon, or in any way interfering with the operation thereof by the plaintiff, by her tenant, Fred Flemmer, or by any of her agents or employees, said defendants being hereby ordered to remain off of said premises, and to refrain from interfering with the plaintiff's operations thereon, pending the trial of said action, or the final order of the court herein."

Then follows a description of the property, and an order for $1,000 undertaking which was furnished. This restraining order was duly served on the defendants on April 6, 1953.

Section 32–0602, NDRC 1943, provides that an injunction may be granted:

"When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation will produce injury to the plaintiff".

Section 32–0603, NDRC 1943, provides, that an injunction may be granted at the commencement of an action if it appears satisfactorily to the court "by the affidavit of the plaintiff, or any other person, that sufficient grounds exist therefor."

In Brace v. Steele County, 77 N.D. 276, 282, 42 N.W.2d 672, this court holds:

"In an action for injunctive relief a temporary injunction may be granted to the plaintiff to restrain the defendant from the commission or continuance of some act against which the injunctive relief is sought pending the final determination of the case on the merits, when it is necessary to protect the rights of the plaintiff during the litigation." See also Burton v. Walter, 13 N.D. 149, 100 N.W. 257; Forman v. Healey, 11 N.D. 563, 93 N.W. 866; McClure v. Hunnewell, 13 N.D. 84, 99 N.W. 48; Gillies v. Radke, 78 N.D. 974, 54 N.W.2d 155.

■ The sole purpose of a temporary injunction is to maintain the cause in status quo until a trial on the merits. Brace v.

Steele County, 77 N.D. 276, 42 N.W.2d 672. See 43 C.J.S., Injunctions, § 2, p. 406, 28 Am.Jur., Injunctions, § 12, p. 204.

From the allegations of the complaint it appears that plaintiff is the owner of the property; that the defendants are not in legal possession of the premises. It is alleged that they are trespassers and that they are by force preventing the plaintiff and her tenant from further farming the premises. The prayer is to keep them off the premises, not to remove them. This is not a mandatory injunction. It is merely to restrain them from entering upon and interfering with the plaintiff's operation of the premises during the pendency of the action. Plaintiff claims that otherwise she is irreparably damaged and has no adequate remedy at law therefor.

■ We find that the trial court did not abuse its discretion in issuing a temporary restraining order upon the complaint and affidavits submitted.

■ Defendants, John Gunsch and Dan Gunsch, and their counsel now plead advice of counsel as a defense to their violation of the restraining order. Generally that is not considered good defense in contempt proceedings.

"The fact that a contemner acted under the advice of counsel is generally no defense to a proceeding for contempt; but that fact will be considered in mitigation of the offense, or the punishment therefor, at least where the contemner has acted on the advice in good faith, or where an injustice will result. However, if the facts and circumstances show that the excuse is merely a pretense and that the action was deliberate, willful, and contumacious, it will not be considered in mitigation; nor, it has been held, may an attorney urge the excuse of advice of counsel in mitigation of punishment." 17 C.J.S., Contempt, § 38, p. 52.

In Brown v. Brown, 335 Mich. 511, 56 N.W.2d 367, 371, it is held:

"It is not a defense that one who violated an injunction did so upon the advice of counsel." See Chapel v. Hull, 60 Mich. 167, 26 N.W. 874.

Counsel for defendants cites the case of Forman v. Healey, 11 N.D. 563, 93 N.W. 866, as his authority for the advice given the defendants. The facts, however, in that case were different. Both parties were living upon different portions of a quarter section of government land, each claiming residence and right to perfect title under the homestead laws of United States. Their rights were pending on contest before the Interior Department of the United States. Decision had not been made. Each party was attempting to oust the other by mandatory injunction and it was held that could not be done.

■ In the case at bar the defendants were not residing upon the premises and as this court has held in Gunsch v. Gunsch, supra, had no right to possession thereof. They were trespassers. They were not acting in good faith and "their primary purpose was to attempt to keep Leona Gunsch from protecting her interest in Tony's property." They clearly violated the restraining order of the court.

In the case of State v. Simpson, 78 N.D. 360, 49 N.W.2d 777, 780, this court held:

" 'An injunctional order in an equity case, pendente lite, issued by a court having full equity powers and complete jurisdiction of the subject matter, must be obeyed while it remains in force, however irregularly or erroneously it may have issued.' " See also Hodous v. Hodous, 76 N.D. 392, 36 N.W.2d 554, 12 A.L.R.2d 1051; Glein v. Miller, 45 N.D. 1, 176 N.W. 113.

Section 27–1003, NDRC 1943, provides that every court of record may punish as for civil contempt any person guilty of misconduct by which a right or remedy of the party to a civil action may be defeated, impaired or prejudiced or (Subd. 3) for

any disobedience to any lawful order, judgment or process of the court.

█ The evidence shows that the defendants, John Gunsch and Dan Gunsch, in this case were guilty of misconduct by which the rights of the plaintiff in this action were prejudiced. They disobeyed the lawful order of the court. The order finding such defendants guilty of contempt of court was proper.

## Receivership.

On July 21, 1953, a motion was made by the defendants for the appointment of a receiver for the real estate in question. This was based upon the affidavit and application of Leona Gunsch reciting the history of the real estate since February 19, 1951, her ownership thereof under the divorce decree, the trespassing and farming of the land by the defendants in 1952 without any accounting, the danger of her losing the 1953 crop; that the only way of protecting her rights and interest in the crops and property was to appoint a receiver to take charge of the same pending final disposition of the litigation over the land in question. The defendants filed an objection and written resistance to said petition reciting their claims to the property under the alleged purchase from Tony.

The court upon the evidence in the five cases appointed a receiver giving him possession of the land and authority to take care of the land and the farming and the receipts therefrom.

Section 32–1001, Subdivision 1, NDRC 1943, provides that a receiver may be appointed by the court in which an action is pending between parties jointly interested in the property involved on the application of "any party whose right to or interest in the property or fund or proceeds thereof is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured".

The defendants argue that the appointment of a receiver is not necessary or proper in a case where the claimant of title is in possession in good faith.

█ The evidence in this case shows that legal title to the premises is in David Gunsch subject to the contract between him and Tony; that Tony's interest was decreed by the court to the plaintiff. The defendants Dan and John, claim equitable ownership under an alleged purchase from Tony. Two-thirds of the crop raised on the premises were to be applied on the contract to David to protect the equitable title of either Dan and John or the plaintiff whoever was finally found to be the rightful owner thereof. If not so applied David could foreclose and deprive the other parties to this action of their interest. The court found that the plaintiff was the owner of the equitable title under the decree of divorce and that the defendants were not in good faith but were trespassers and had no legal right to the property. In this case all of the parties to this lawsuit claim an interest in the crops. These facts bring this appointment within the provisions of Section 32–1001, supra.

The case of Olson v. Union Central Life Ins. Co., 58 N.D. 899, 228 N.W. 223, 225, involved the appointment of a receiver for certain crops and restraining the plaintiff from disposing of the same. The defendant had foreclosed on certain real estate in 1924 and no redemption had been made by the plaintiff. Plaintiff began the action to set aside and vacate the sale. He remained in possession in 1926 and 1927 and farmed the premises. The action came for trial and judgment was entered for the defendants in June 1927. The defendants then applied for the appointment of a receiver for the 1927 crops which plaintiff had seeded. The court says:

"The main case had been tried and disposed of by the trial court. The judgment entered by that court was in favor of the respondent, quieting title in it and awarding the possession of the premises in question to it. The crop involved in the receivership proceeding, with respect to which the order from which this appeal was taken was entered, was crop about to mature on the premises. At the time the application for the order was made, no

appeal had been perfected. At that time the court unquestionably had jurisdiction and authority to appoint a receiver to conserve it, if it were necessary that this be done."

"A receiver will be appointed over crops where parties are contesting the title of the land, each claiming to be in possession, and where each is interfering with the other in harvesting crops grown by him, and threatening forcible resistance." 1 Tardy's Smith on Receivers, Section 203, p. 505.

It has been generally recognized by this court as well as other authorities that equity jurisdiction will give ancillary aid to an action in court by the appointment of a receiver when the facts show such remedy necessary to preserve the status quo of the property in issue until the proper disposition thereof has been determined in the litigation providing irreparable damage may result if the existing status of the property is not preserved. Sec. 32–1001, Subdivision 6, NDRC 1943, provides that a receiver may be appointed in all cases, "where receivers heretofore have been appointed by the usages of court of equity." See also, Martin v. Harnage, 26 Okl. 790, 110 P. 781, 38 L.R.A.,N.S., 228; Dale v. Duffy, 44 N.D. 33, 176 N.W. 97; Olson v. Union Central Life Ins. Co., 58 N.D. 899, 228 N.W. 223.

"Where crops are planted by a trespasser who wrongfully assumes to hold possession and threatens to harvest and market the crops for his own benefit, the appointment of a receiver is authorized in appropriate proceeding." Barnes v. Morrison, 102 Cal.App. 152, 282 P. 986, 989.

"If plaintiff has a lien, charge or other interest in the defendant's property, and there is reasonable ground to apprehend that, pending the litigation, the property, the subject of such lien, charge or other interest will be disposed of fraudulently or in such a way as to deprive the complaining party of the fruits of his recovery, then a court of equity will step in and preserve the property by injunction or by the appointment of a receiver." Vol. 1, Clark on Receivers, Second Addition, Sec. 187, p. 245.

In Ingwalson v. Aney, 54 N.D. 627, 210 N.W. 498, 500, it is said:

"Whether in any given case a situation exists which justifies or requires the appointment of a receiver is one addressed to the sound legal discretion of the district court and its order will not be disturbed on appeal unless clearly wrong. 2 Tardy's Smith on Receivers, 2d ed. p. 1954". See also Dale v. Duffy, 44 N.D. 33, 176 N.W. 97, 45 Am.Jur. Receivers, Sec. 47, p. 43.

Defendant's counsel argues that when the district court had made its order fixing the amount of undertaking on appeal and stay as to money parts of the judgment his jurisdiction ceased and that when an appeal was taken it had no more power or duty as to the receivership. He claims that no application was pending for the reappointment of a receiver at the time the "Modified Order Fixing Conditions and Amount of Undertaking on Appeal, Staying Execution and Proceedings to Enforce Judgment Pending Appeal" dated March 24, 1954, was issued. There was no stay of the receivership granted in said order. Instead it was provided that possession of the real estate in question should remain in the receiver appointed to take possession thereof and of the 1953 crops, and that he should continue in possession under said order and "take possession of the 1954 crops upon said real estate, and all crops raised thereon thereafter, until further order of the court." This was done for the purpose of protecting and saving the crops of 1954 for the same reason that the receiver was appointed in the first place. The litigation was still pending on appeal.

In Olson v. Union Central Life Insurance Co. supra [58 N.D. 899, 228 N.W. 225], this court holds:

"When the appeal was perfected the trial court was thereby divested of the

power to hear the parties further upon any question involved in the determination of the main action but it retained jurisdiction to protect and preserve the property which was the subject of the litigation. See section 7588 C.L. 1913; Mitchell v. Roland, 95 Iowa 314, 63 N.W. 606; Brinkman v. Ritzinger, 82 Ind. 358; Beard v. Arbuckle, 19 W.Va. 145; Penn Mut. Ins. Co. v. Semple, 38 N.J.Eq. 314; and generally the note in 72 Am.St.Rep. page 39; High on Receivers, § 110; 3 C.J. 1268 et seq."

The court was fully warranted in the appointment of a receiver in this action.

The judgment of the district court is affirmed.

MORRIS, C. J., and JOHNSON, BURKE and SATHRE, JJ., concur.

### On Petition for Rehearing.

GRIMSON, Judge.

The defendants filed a petition for rehearing claiming that the trial court had had no authority to issue the preliminary injunction because the defendants were in possession of the land involved under a claim of ownership; that an injunction could not be substituted for an action at law for possession of real property and that the plaintiff instead of suffering an irreparable injury received a benefit from the defendants' farming the land in 1953.

This is an action to quiet title in the plaintiff and for an injunction and an accounting. A temporary restraining order was issued on the filing of the complaint. A temporary injunction may be issued by the court in its discretion at the commencement of an action if by the pleadings and supporting affidavits the court deems sufficient grounds exist therefor. Sec. 32–0603, NDRC 1943. "This provision vests in the trial court the discretion to determine in the first instance whether a temporary injunction shall be granted

* * *." Gillies v. Radke, 78 N.D. 974, 985, 54 N.W.2d 155, 162. See also Donovan v. Allert, 11 N.D. 289, 297, 91 N.W. 441, 58 L.R.A. 775; Sand v. Peterson, 30 N.D. 171, 176, 152 N.W. 271; 43 C.J.S., Injunctions, § 14, p. 420. An order to show cause including a restraining order may be issued if it is "shown in the moving papers that there exists such an exigency or occasion as requires the immediate issuance of an order so that the rights of the parties may be preserved." 32–0607, NDRC 1943. The purpose of such restraining order is to keep matters in status quo until a determination is made whether a temporary injunction should issue.

"A temporary restraining order, while in effect a species of injunction, is in some respect to be distinguished therefrom. It is an interlocutory order or writ issued by the court upon an application for an injunction, and is intended as a restraint on the defendant until the propriety of granting a preliminary injunction can be determined, thus going no further in its operation than to preserve the status quo until that determination. When that determination is made, the whole force of the temporary restraining order ceases by its own limitations." 28 Am.Jur. Sec. 11, p. 203, See also 43 C.J.S., Injunctions, § 8, p. 415.

In the case at bar statements were made in the complaint and affidavits that the plaintiff was the owner of the land involved; that the defendants were trespassing upon said land; that they had illegally removed the 1952 crops off the premises and a portion of the buildings; that they were by force keeping the plaintiff's tenant, who was ready to go on and farm the premises in 1953, off the land; that this could cause the plaintiff irreparable injury for which she had no adequate remedy at law. These allegations would seem to raise an exigency justifying the district court in the exercise of its discretion to issue its order on April 4, 1953, to the defendants to show cause on May 8, 1953,

why the temporary injunction should not be granted and to determine the propriety thereof, restraining the defendants in the meantime from interfering with plaintiff's possession so as to preserve the status quo until such hearing.

"It is not necessary that the complainant's rights be clearly established, or that the court find complainant is entitled to prevail on the final hearing. It is sufficient if it appears that there is a real and substantial question between the parties, proper to be investigated in a court of equity, and in order to prevent irremedial injury to the complainant, before his claims can be investigated, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation." Goldfield Consolidated Mines Co. v. Goldfield Miners' Union No. 220, C.C., 159 F. 500, 511.

When an injunction is granted without notice the defendant may at any time before trial apply to the court to vacate or modify the same. Sec. 32–0609, NDRC 1943.

In the case at bar, the defendants, on April 6, 1953, were served with the restraining order and accompanying papers. On April 16, 1953, the defendants answered on the merits claiming ownership of the premises and asked that the title thereto be quieted in them and that "the complaint be dismissed and that plaintiff take nothing." No motion was made that the temporary restraining order be dissolved. On April 24, 1953, an affidavit of prejudice was filed against Judge Wigen. On May 1 Judge Amundson was designated by the supreme court to hear the case. On May 2, 1953, the defendants, Dan and John Gunsch, filed their return to the order to show cause making reference to and incorporating their answer therein. No request was made for a dissolution of the temporary restraining order. On May 6, 1953, Judge Amundson set a new hearing on the order to show cause and restraining order for May 18, 1953. On May 13,

1953, plaintiff filed a reply to defendant's counterclaim making general denial and specific denial of defendant's ownership of the land in question. On May 18, the defendants filed "return to application for temporary injunction," praying that it be denied and plaintiff granted no temporary relief whatsoever. Both parties filed further affidavits in support of their claims. There is no record, however, of any hearing being had on May 18, 1953, or of any order having been entered in the matter and certainly no appeal was taken from any action of the court on that order to show cause.

In the case of Gillies v. Radke, 78 N.D. 974, 54 N.W.2d 155, the situation was somewhat similar to the one at bar except that the claims of the defendants were stronger. The plaintiff obtained a deed to the premises. Defendants had been leasing the land for some years past and were lawfully in possession. The plaintiff brought suit for an injunction to restrain the defendants from interfering with the plaintiff's possession under his deed alleging the defendants were trespassers. The court forthwith granted a preliminary injunction restraining the defendants from interfering with plaintiff's use and occupancy of the premises and directed the defendants to show cause why such an order should not be continued until final judgment. The plaintiffs went into possession. The defendants claimed to have a right to possession of the premises under a lease with an option to buy which they claimed to have exercised. A hearing on the order to show cause was had upon which the court continued the temporary injunction. No appeal was taken from that order. The court says:

"It may be as the defendants contend that the trial court improvidently issued the temporary injunction and that instead of preserving the status quo it disturbed it by placing the plaintiffs in possession of the land. However, both the original issuance of the injunction and its subsequent continuation at the close of the hearing of May

10 were orders issued by a court that had jurisdiction of both the subject matter and the parties. No appeal was taken from the order continuing the injunction, as might have been done under the provisions of Section 28-2702, NDRC 1943. * * *"

The defendants in the instant case did not have to wait until May 18th. They could have made a motion at once to dissolve the preliminary restraining order. They did not do that. In 43 C.J.S., Injunctions, § 247, p. 986, it is said: "A formal motion to dissolve ordinarily is necessary, unless the answer contains a prayer for dissolution." In Manhatten Mfg. & Fertilizing Co. v. Van Keuren, 23 N.J.Eq. 251, the court holds that:

"The existing injunction can be removed only upon notice and motion to dissolve. Without such notice and motion I shall not assume to consider the propriety of its continuance."

In the instant case the defendants made no motion to dissolve the restraining order or to force a decision so that an appeal could be taken on the propriety thereof.

 It is clear that if there was any question about the propriety of the trial court issuing the temporary restraining order that was waived by the failure of the defendants to move that it be quashed, Sec. 32-0609, NDRC 1943, and by the failure to insist on a dissolution upon the hearing set for May 18, and finally by the submission of the whole matter for trial on the merits.

In the petition for a rehearing the defendants further contend that the court had no jurisdiction in the contempt proceedings because of irregular procedure and the invalidity of the temporary injunction.

On May 28 plaintiff made application for an order to show cause why the defendants should not be punished for contempt of court, setting forth the violation of the restraining order issued by Judge Wigen on April 4, and filed affidavits in support thereof. On June 1 Judge Wigen issued an order to show cause on June 10 why defendants should not be punished for contempt of court for failing to obey such restraining order. On June 8 plaintiff filed an affidavit of prejudice against Judge Wigen in the contempt matter and on June 12 Judge Amundson was designated in his place. On July 21, 1953, Judge Amundson issued an order to show cause on July 22 why the defendants should not be punished for contempt. On July 23, defendants filed a "return to injunction and contempt" in which they admit farming the land but claim they did so on advice of their counsel to the effect that the injunctional order was void. Thereafter it was stipulated that the contempt proceedings be submitted on the evidence received in the joint trial of six related cases then pending. Upon the evidence so received the trial court issued the final injunction prayed for, appointed a receiver and found the defendants guilty of contempt.

The procedure for the contempt proceedings was in accordance with the statute. The court may punish as for civil contempt any person guilty of violation of an order by which the pending proceedings may be impaired. 27-1003, NDRC 1943. The procedure was in accordance with subdivision 1, Sec. 27-1007, NDRC 1943, by the issuance of an order to show cause.

Instead of bringing the contempt matter on for hearing the defendants, claiming the advice of counsel, proceeded contemptuously to do the things they had been enjoined from doing.

As already stated, the restraining order was not void. We have also held that even if its issue were irregular it had to be obeyed until it was vacated by the court.

In Glein v. Miller, 45 N.D. 1, 176 N.W. 113, 115, we said:

"To hold that an order improvidently issued can be violated with impunity is to invite litigants to resort to the use of force sufficient to maintain their rights as they understand them to be. Such a policy should not be adopted in

the system of law that prides itself upon having a remedy for every wrong."

In State v. Markuson, 7 N.D. 155, 73 N.W. 82, this court held: "An injunctional order in an equity case, pendente lite, issued by a court having full equity powers and complete jurisdiction of the subject-matter, must be obeyed while it remains in force, however irregularly or erroneously it may have been issued." In State v. Simpson, 78 N.D. 360, 366, 49 N.W. 2d 777, 783, we said: "The defendant is given the right to move for the vacation of an injunction at any time, but until he does so, and the court finally grants his application the injunction prevails and a violation thereof would constitute contempt of court." See also Hodous v. Hodous, 76 N.D. 392, 36 N.W.2d 554, 12 A.L.R.2d 1051.

We find the proceeding initiating the contempt regular and the preliminary restraining order the defendants were charged with violating valid. We adhere to our original decision.

The petition for a rehearing is denied.

BURKE, C. J., and J O H N S O N, SATHRE and MORRIS, concur.